**In re Donald Del SAEGER and Becky Jane Saeger, Debtors.**

**Donald Del SAEGER and Becky Jane Saeger, Plaintiffs,**

v.

**ITT FINANCIAL SERVICES, Defendant.**

**Bankruptcy No. 4–88–1185.
Adv. No. 4–90–0122.**

United States Bankruptcy Court, D. Minnesota.

Sept. 28, 1990.

Randall L. Seaver, Morris, Fuller & Seaver, P.A., Minneapolis, Minn., for debtors.

Daniel W. Stauner, Stein & Moore, P.A., St. Paul, Minn., for objectors.

## MEMORANDUM ORDER

ROBERT J. KRESSEL, Chief Judge.

This proceeding came on for hearing on the plaintiffs' motion for summary judgment. Randall L. Seaver appeared for the plaintiffs. Daniel W. Stauner appeared for the defendant. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103(b). This is a core proceeding. Based on the memoranda and arguments of counsel, and the file in this proceeding, I make the following memorandum order.

## FACTUAL BACKGROUND

On February 28, 1986, the Saegers borrowed money from ITT, signed a note and secured the debt with a second mortgage on the their homestead. They filed their Chapter 7 case March 25, 1988.

On May 2, 1988, at their meeting of creditors, the Saegers appeared with their attorney and signed an "Agreement to Reaffirm" their debt to ITT.[1] The Sae-

---

1. No one has provided me with a copy of the reaffirmation agreement.

ger's attorney also signed the Agreement and it was filed with the court in accordance with 11 U.S.C. § 524(c)(3). No other documents were executed in conjunction with the Agreement at that time or at any later time. The Saegers and ITT agree that no hearing was held pursuant to 11 U.S.C. § 524(c)(5) and (d).

On July 5, 1988, an order was entered discharging the Saegers of their debts including the obligation on the note owed to ITT. After the Saeger's debts were discharged they made payments to ITT pursuant to the Agreement signed May 2, 1988, for approximately one year.

During this time, the Saegers defaulted on their first mortgage. As a result the first mortgagee, United Mortgage Corporation, foreclosed on the Saegers home. The foreclosure sale was held on November 30, 1988.

On April 10, 1989, Donald Saeger called the ITT offices and told ITT that the holder of the first mortgage was foreclosing and he had until May 31 to pay the first mortgage off. Apparently because Saeger only informed ITT that the first mortgage was "foreclosing", ITT waited until June 12, 1989 to call the first mortgagee for further information about the Saeger's foreclosure.

The Saeger's redemption period expired on May 30, 1989, and ITT did not redeem in the period allotted to it by statute. The Saegers stopped making payments to ITT under the Agreement.

In June of 1989, ITT commenced a lawsuit in the state court to have the Agreement enforced. The Saegers defended, claiming that their debt to ITT was discharged and the Agreement was invalid because 11 U.S.C. § 524(c) and (d) were not complied with. ITT argued that § 524(d) applies only to reaffirmation agreements signed after the discharge has been granted, therefore, the Agreement is enforceable. The state court judge required the

Saegers to have the matter resolved in bankruptcy court although the state court certainly had jurisdiction to do so.

## DISCUSSION

■ Summary judgment will be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ. Proc. 56(c). When deciding a motion for summary judgment, the court must view the facts and all reasonable inferences drawn from the facts in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Foster v. Johns–Manville Sales Corp.*, 787 F.2d 390 (8th Cir.1986).

The dispute in this case centers around whether the reaffirmation agreement with ITT, signed by the Saegers and their attorney is enforceable.[2]

11 U.S.C. § 524(c) sets out the requirements to establish an enforceable reaffirmation agreement. 11 U.S.C. § 524(c) provides:

An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law,[3] whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

(2) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

---

**2.** The plaintiffs have characterized the issue as one of dischargeability. However, ITT's original debt was clearly discharged and the real issue is whether the reaffirmation agreement is enforceable.

**3.** Minnesota's Statute of Frauds has specific requirements for the enforceability of reaffirmation agreements *see* Minn.Stat. § 513.01. No one argues that these requirements have not been met.

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that such agreement—

(A) represents a fully informed and voluntary agreement by the debtor; and

(B) does not impose an undue hardship on the debtor or a dependent of the debtor;

(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

(5) the provision of subsection (d) of this section have been complied with; and

(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—

(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor.

(B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

11 U.S.C. § 524(c). The parties concede that all the requirements have been complied with other than § 524(c)(5) which in turn requires that § 524(d) be complied with.

11 U.S.C. § 524(d) provides:

In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, 1228, or 1328 of this title, the court may hold a hearing at which the debtor shall appear in person. At any such hearing, the court may inform the debtor that a discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section, then the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall

(1) inform the debtor—

(A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and

(B) of the legal effect and consequences of—

(i) an agreement of the kind specified in subsection (c) of this section; and

(ii) a default under such an agreement;

(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this section, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor.

11 U.S.C. § 524(d).

Prior to 1984, the Bankruptcy Code mandated court approval of most reaffirmation agreements. *Arnhold v. Kyrus*, 851 F.2d 738, 740 n. 2 (4th Cir.1988). This paternalistic court approval provision was designed to protect unwitting debtors from creditors' influence to reaffirm a dischargeable debt. *Arnhold*, at p. 740 n. 2.

The 1984 amendments to the Bankruptcy Code required the debtor to appear in court for "admonitions." *Arnhold*, at 740 n. 1. Court approval was no longer required but the statute did require the court to inform the debtor that the debtor was not legally obligated to make the reaffirmation agreement. *Arnhold*, at 740 n. 1. The 1984 amendments demonstrate that Congress intended that the court continue to regulate reaffirmation agreements to protect the debtor's interest. *Arnhold*, at 740 n. 2.

In 1986, § 524(d) was amended again. The amendments gave the court discretion to hold discharge hearings but still mandated hearings under § 524(c). *In re Oliver,*

99 B.R. 73, 77 (Bkrtcy.W.D.Okla.1989). The main thrust of the 1986 amendments was to eliminate the routine holding of hearings but to retain them when debtors were reaffirming debts.

The structure and the language of §§ 524(c)(5) and 524(d), even after the 1986 amendments, demonstrate Congress' intent to have the court inform the debtor of the debtor's options with regard to reaffirmation agreements in order for those agreements to be valid and enforceable. *Arnhold*, at p. 740.[4]

If a creditor wants to be sure reaffirmation agreements are binding, the creditor must ensure that the debtor be informed of the debtor's options as required by §§ 524(c)(5) and 524(d). *In re Churchill*, 89 B.R. 878, 879 (Bkrtcy.D.Colo.1988).

ITT argues that §§ 524(c)(5) and 524(d) requires a hearing only in the case of a post-discharge reaffirmation agreement. This reading of the section is inconsistent with the other provisions of § 524(c). ITT essentially argues that § 524(d) should be read chronologically—if after the debt is discharged, the debtor wishes to reaffirm a debt, then the court shall hold a hearing. § 524(d) is not intended to be read as a chronological outline to reaffirm a debt after discharge. It simply states the two prerequisites to a hearing: 1) A discharge has been granted; and 2) the debtor wishes to reaffirm. The statute does not require the two prerequisites to occur in the order stated. In fact, by explicit terms, a reaffirmation agreement is not enforceable unless it is executed prior to the entry of discharge. 11 U.S.C. § 524(c)(1). § 524(d) simply requires that the court inform the debtors of their options if they desire to reaffirm a dischargeable debt. The importance of these admonitions is apparent from ITT's deposition of Becky Saeger. ITT asked Mrs. Saeger if she understood what would happen to the debt owed to ITT when the Saeger's filed bankruptcy and Mrs. Saeger replied that she really did not understand. If ITT had complied with § 524(c)(5) and pursued a hearing in accordance with § 524(d), after being "admonished" of her rights, Mrs. Saeger may have understood the implications of her actions.

ITT also argues that somehow § 524(d) is inconsistent with § 521(2) which provides deadlines for debtors to state their intentions regarding secured property and to perform these intentions. First of all, not all reaffirmation agreements deal with secured debts. Second, there is nothing inconsistent in requiring the debtor to state the debtor's intention to reaffirm, then requiring the debtor to follow through and execute a reaffirmation agreement, but also, then to require the debtor to appear at a discharge hearing to be "admonished" about the debtor's rights and to allow the debtor to rescind the agreement, if time remains to do so.

ITT also argues that following the custom and practice of the District of Minnesota, they did not request a hearing in accordance with § 524(d). Local Rule 116(d) provides:

> *Discharge Hearing* A hearing under 11 U.S.C. § 524(d) regarding the discharge or postpetition agreements will be held on motion of the debtor or other party in interest.

Local Rule 116(d). It may be that others have not followed the statutory requirements of §§ 524(c)(5) and 524(d) and yet are reaping the benefits of an unenforceable reaffirmation agreement but that is irrelevant. The Code and Local Rules, regardless of the custom and practice of the community, require a hearing pursuant to §§ 524(c)(5) and 524(d) to establish an enforceable reaffirmation agreement.

■ There is obviously a certain unfairness in allowing the debtor to sign a reaffirmation agreement only later to decide not to live up to it. The result however is mandated by statute and was easily avoidable by ITT. ITT should simply have requested a hearing as provided by Local Rule 116(d) and required by § 524(c).

---

4. The timing of enforceability may, in some cases, make the admonitions moot. However, in most cases the debtor will still have time to rescind the agreement after receiving admonitions at the § 524(d) hearing.

Since the requirements of § 524(c)(5) have not been complied with I must find that the reaffirmation agreement is not enforceable.

## AFFIRMATIVE DEFENSES

ITT argues that, if § 524(c) and § 524(d) require the debtor to be admonished and informed of the debtor's rights by the court, the Saegers should still be prevented from arguing that the reaffirmation agreement is unenforceable on grounds of estoppel and laches.[5]

The procedural posture of this matter is worth noting. It is ITT which is attempting to enforce the reaffirmation agreements as plaintiff in state court. It is the debtors who are defending that action. It is only because the state court required the debtors to commence this action in bankruptcy court that ITT finds itself as a defendant. ITT is not really using estoppel and laches as defenses, it is trying to use them affirmatively. Allowing such use would directly contravene the express requirements of the statute and I am not sure that they are available. However, in any case, they do not apply.

### I. Estoppel

■ Estoppel is usually a question of fact, but if only one inference can be drawn from the facts it is a question of law. *In re Westling Mfg., Inc.*, 442 N.W.2d 328, 331 (Minn.App.1989). "Equitable estoppel is a rule of substantive law." *Olsen–Frankman Livestock Mktg. Serv. Inc., v. Citizens Nat. Bank*, 4 B.R. 809, 811 (D.Minn. 1980). Therefore, Minnesota law is applicable. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ ITT argues that the Saegers are estopped from "repudiating" the Agreement because of their election to reaffirm under 11 U.S.C. § 521(2). ITT is correct in stating that the Saegers filed a statement of intention to retain the property and reaffirm the obligation to ITT. ITT neglects the fact that § 521(2) was not designed with enforcement mechanisms and that to

enforce the Agreement, § 524(c) must be complied with. Yet, ITT argues that it would be unfair to let the Agreement fail as invalid.

To assert the defense of equitable estoppel, five elements need to be shown:

(1) misrepresentation of a material fact;

(2) the misrepresentation must be knowing;

(3) there must be an intention that the misrepresentation be acted upon;

(4) the party asserting estoppel must not have had knowledge of the true facts; and

(5) the party asserting the estoppel must have relied upon the misrepresentation with detriment.

*Alwes v. Hartford Life and Acci. Ins. Co.*, 372 N.W.2d 376, 379 (Minn.App.1985) (*citing Transamerica Ins. Group v. Paul*, 267 N.W.2d 180, 183 (Minn.1978)).

ITT has several arguments to support its position but the facts do not establish that the Saegers knowingly misrepresented a material fact to ITT.

First, ITT claims that the very fact that the Saegers signed the Agreement and failed to comply with it evidences a knowing misrepresentation of a material fact. Yet, ITT has presented no evidence that the Saegers intended to mislead ITT when they signed the Agreement. ITT has presented no evidence from which one could infer that the Saegers knew that the Agreement was unenforceable until ITT pursued its state court claim.

Second, ITT claims that the Saegers intentionally misrepresented material facts with respect to the foreclosure of the first mortgage. The Saegers informed ITT that United Mortgage Corporation held the first mortgage and that ITT would be the second mortgagee when the Saegers received a mortgage from ITT. Although the Saegers had no duty to, they informed ITT that the first mortgagee was foreclosing in April, well before the redemption period ran. ITT took no action on the Saegers information until their statutorily allotted time to redeem had already expired.

---

5. ITT also pleaded the defense of novation in its answer but did not brief or argue it.

Therefore, one cannot infer that the Saegers misrepresented facts with respect to the foreclosure of the first mortgage.

Third, ITT argues that estoppel should apply in this case because the Saegers informed ITT that the City of Richfield was looking into buying the Saeger's home. Again, none of the information concerning the possible purchase by the City of Richfield was misrepresented. ITT has presented no evidence that the Saegers misrepresented any fact much less that they knowingly misrepresented anything.

Lastly, ITT claims that the very fact that the Saegers made payments pursuant to the agreement for approximately one year misrepresented a material fact. There are no inferences which can be drawn from these facts upon which to base a claim of estoppel. The fact that the Saegers made payments pursuant to the agreement for approximately one year hardly demonstrates that they intended to mislead ITT. The Saegers believed the Agreement was enforceable until ITT pursued their state court action. At that point an attorney advised the Saegers that the agreement was unenforceable because § 524(c)(5) had not been complied with.

## II. Laches

■ In order for ITT to establish it's second affirmative defense of laches, it must show that it would be inequitable to grant Saeger's relief because they acted with unreasonable delay in asserting a known right to ITT, which resulted in prejudice to ITT. *Klapmeier v. Center*, 346 N.W.2d 133, 137 (Minn.1984).

ITT did not brief or argue this defense extensively. From the record I find no evidence to establish the Saegers prejudiced ITT by an unreasonable delay in asserting a known right. ITT has not established, as it claims, that the Saegers made payments to ITT on the Agreement for approximately one year while they knew the Agreement was unenforceable. To the contrary, the record established that the Saegers believed the reaffirmation agreement was enforceable until advised by an attorney after being sued in state court,

whereupon they immediately raised the issue. This cannot be equated with an unreasonable delay of asserting a known right. Therefore, I find the defense of laches is inapplicable.

## CONTEMPT

■ The Saegers assert that ITT intentionally violated both the discharge injunction and this court's order of July 5, 1988 discharging the Saeger's debts. A party may be found in contempt if it knowingly and wilfully violated a specific court order. *In re Tom Powell and Son Inc.*, 22 B.R. 657, 661 (Bkrtcy.W.D.Mo.1982). In contempt cases, "wilfulness" means " 'a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of any order.' " *Hubbard v. Fleet Mortg. Co.*, 810 F.2d 778, 781 (8th Cir.1987) (quoting *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir.1983)).

First, ITT did not attempt to collect a discharged debt. ITT was attempting to enforce the reaffirmation agreement which it truly believed was enforceable.

Second, I do not think ITT's actions constituted contempt of my orders. The Saegers have produced no evidence upon which I can find deliberate action as opposed to inadvertent or negligent actions. The record indicates that ITT believed they were seeking enforcement of a valid reaffirmation agreement. There is no evidence that ITT wilfully violated this court's orders.

In an appropriate case, when one party moves for summary judgment the court may grant summary judgment for the non-moving party even if that party did not file a motion for summary judgment. *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388, 393 (5th Cir.1989) (citing *Landry v. G.B.A.*, 762 F.2d 462, 464 (5th Cir.1985), 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil 2d* § 2720). This is such a case. Although ITT has not properly moved for summary

judgment[6] on this point, I conclude that it is entitled to summary judgment on the issue of contempt.

THEREFORE, IT IS ORDERED:

1. The plaintiffs are granted summary judgment on Count A of their complaint.

2. The defendant is granted summary judgment on Count B of the plaintiffs' complaint.

3. The reaffirmation agreement between the plaintiffs and the defendant is not enforceable.

4. The plaintiffs shall recover nothing from the defendant except costs of $120.00.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**6.** ITT filed a document that it labeled as a motion for summary judgment. However, it did not put it on the calendar nor properly give notice of its motion.