In re Arlene Lois STANGLER, Debtor.

Molly T. SHIELDS, Trustee of the Bankruptcy Estate of Arlene Lois Stangler, Plaintiff,

v.

Richard J. STANGLER, Defendant.

Bankruptcy No. 3–94–1484.
Adv. No. 3–94–246.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Sept. 14, 1995.

█

---

1. *See* May 17, 1995 Order, p. 459.

Timothy Ewald, Minneapolis, MN, for plaintiff.

Kurt M. Anderson, Minneapolis, MN, for defendant.

## ORDER

DENNIS D. O'BRIEN, Chief Judge.

This matter was heard on July 10, 1995, on Defendant's *Motion For Amended Findings And Order For Judgment And/Or New Trial.* Appearances were noted in the record. The Court, having heard and received arguments; having reviewed the pleadings and relevant files; and, being fully advised in the matter; now makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

### STATEMENT OF THE CONTROVERSY.

 This adversary proceeding was brought by Plaintiff, Molly Shields, as Trustee of the Bankruptcy Estate of Arlene Lois Stangler, for turnover by Defendant Richard Stangler of a debt that is a matured past-due note owing to Ms. Stangler at filing of her bankruptcy. The proceeding was brought pursuant to 11 U.S.C. § 542(b). Mr. Stangler defended the action on the ground that the note is unenforceable, because it is a post-discharge reaffirmation of a debt that

was discharged in his own earlier bankruptcy case.[1]

Prior to trial, the parties filed a stipulation of facts, pursuant to a trial order entered on May 3, 1995. The stipulation contained these recitations of relevant undisputed facts:

1. On or about May 17, 1988, Loretta J. Crosby and Leon Pittman granted to Defendant and Arlene Stangler ("Debtor"), as joint tenants, real property in Le Sueur County (the "Crosby farm"), a portion of which is described as:

The North 2,254 feet of the West 1,990 feet of said Northwest Quarter of Section 26, Township 110 North, Range 23 West, Le Sueur County, Minnesota, excepting therefrom all that portion of the West 32 acres of the West One-half of the Northwest Quarter, Section 26, Township I 10 North, Range 23 West, that lies North of the center of Dodd Road, which runs in a general Northwesterly and Southeasterly direction across the above described tract.

2. Pursuant to the Le Sueur County District Court's Order for Judgment and Judgment and Decree, dissolving the marriage between Defendant and Debtor, filed on April 30, 1990, and the quit claim deed dated May 11, 1990, Defendant became entitled to all right, title, interest and equity in the above-described portion of the Crosby Farm, subject to a lien in favor of Debtor in the amount of $31,600.

3. The defendant filed Chapter 7 bankruptcy, Minn.Bky. 3–91–2537, on May 6, 1991. Debtor was listed as a secured creditor on Schedule A–2 with a $31,000 marital lien. On August 12, 1991, the bankruptcy court entered a discharge of the defendant.

4. On December 26, 1991, the defendant signed a promissory note ("Promissory Note") in favor of the debtor in the amount of $20,000. A copy of the note was attached to the Complaint in this matter. The note provided for a payment schedule as follows: $4,000 payable on December 1, 1992; $4,000 payable on December 1, 1993; $4,000 payable on December 1, 1994; $4,000 –payable on December 1, 1995; and, $4,000 Payable on December 1, 1996.

5. Subsequent to Defendant's filing of his bankruptcy petition, and at or about the time of the execution of the Promissory Note, Debtor provided to Defendant an unrecorded, undated, and not fully executed deed purporting to release her marital lien on the Crosby Farm.

6. Defendant did not make payments according to the schedule set forth in the Promissory Note.

7. After executing the Promissory Note the defendant made the payments indicated in Paragraph II of the complaint, totaling $5,558.00, at approximately the times indicated in the complaint.

8. On April 1, 1994, Debtor filed a petition seeking relief under Chapter 7 of the Bankruptcy Code.

9. Plaintiff is the duly appointed, qualified and acting Trustee appointed in Debtor's bankruptcy case.

10. In her bankruptcy Schedule B, Debtor listed as an account receivable an "unsecured debt for sale of real estate property in 1990 from Richard Stangler in unpaid approximate amount of $15,000." *Pre-trial Stipulations,* dated and filed June 7, 1995.

Trial was held on June 12, 1995. At conclusion of the evidence, and after oral argument, the Court made its findings and conclusions orally on the record; and, ordered judgment for the Plaintiff. An *Order For Judgment* and *Judgment* were thereafter entered on June 15, 1995. The *Judgment* adjudged that:

Defendant Richard J. Stangler shall turnover to the Trustee, funds due and owing on the Promissory note, pursuant to 11 U.S.C. § 542, which included [sic] $14,000, plus interest, costs and fees.

The decision in the case was expressly premised on these underlying findings and conclusions: 1) the allegation that the note represented a post-discharge reaffirmation of a discharged debt is an affirmative defense

---

**1.** Reaffirmation agreements are enforceable only if they are entered into prior to discharge of a debtor's debts, and if they otherwise comply with 11 U.S.C. § 524(c).

raised by Defendant in the proceeding; 2) Defendant had the burden of proof on the issue of reaffirmation; 3) whether a post-discharge agreement involving collateral, which once secured a discharged debt, is a reaffirmation of the discharged debt, is a question of fact; 4) Plaintiff established *prima facie* liability of Defendant on the note; and, 5) Defendant did not establish that the note was a post-discharge reaffirmation of a discharged debt.

On June 26, 1995, Defendant filed the present *Motion For Amended Findings, Order, And Judgment And/Or New Trial.* Defendant seeks a new trial, arguing that: the Court *sue sponte* decided the case on a legal theory that: was not presented by Plaintiff; and, that is contrary to established law of the district. Defendant cites *In re Saeger,* 119 B.R. 184 (Bankr.Minn.1990), in support of the assertion. He claims surprise, and seeks a new trial on grounds of fundamental fairness. Alternatively, Defendant seeks amended findings, claiming that the Court's recitation at conclusion of the trial was insufficient to support the Court's conclusions. Finally, Defendant seeks amendment of the Judgment, at least to remove language of an injunctive nature.

## II.

### NEW TRIAL.

█ The legal theory supporting the decision does not conflict with *In re Saeger,* 119 B.R. 184 (Bankr.Minn.1990); nor is it novel. The theory is consistent with Plaintiff's position, argued throughout the course of the litigation; and, it was the basis for denial of Defendant's motion for summary judgment early in the case. There is no basis for Defendant's claim of unfair surprise.

The *Saeger* court ruled that a reaffirmation agreement was not enforceable where the debtor failed to attend the discharge hearing. The *Saeger* court was not presented with the issue of whether the agreement in question was a reaffirmation of a discharged debt. The case involved an agreement titled "Agreement to Reaffirm" that

was entered into by the debtor prior to the debtor's discharge. *In re Saeger,* 119 B.R. 184, 185 (Bankr.Minn.1990). Additionally, while the *Saeger* court observed in a footnote that the creditor had alleged in its pleadings that the agreement was a novation and not a reaffirmation agreement; the court noted that the creditor presented no evidence or supporting argument on the assertion; and, the *Saeger* court did not decide the issue. See: *In re Saeger* at 189, fn. 5.

Here, Defendant apparently assumed that because the post-discharge agreement between the parties involved collateral that once secured a discharged debt, the agreement was a reaffirmation agreement as a matter of law. This Court held, however, that a post-discharge agreement is not, as a matter of law, a reaffirmation of a discharged debt, just because it involves collateral that had secured a discharged debt; but, that such an agreement can constitute a novation, where a debtor purchases the creditor's lien interest at present value.

11 U.S.C. § 524(c) defines a reaffirmation agreement as:

> [An] agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title . . .

That a creditor's surviving lien on property of a debtor can have value independent of the discharged debt; and, that a debtor's post-discharge agreement to purchase that interest can constitute a novation; are not novel legal theories. See: *Minster State Bank v. Heirholzer,* 170 B.R. 938 (Bankr.N.D.Ohio 1994); *Heape v. First Federal Savings And Loan Ass'n,* 134 B.R. 20 (Kan.1991). The *Minster* court found that the debtor's post-discharge agreement with a homestead mortgage lender to avoid foreclosure, was a novation. In such cases, where: the transaction is ordinary course and at arm's length; and, where the amount to be paid by the debtor is the present value of the lien, ordinarily no part of the consideration is based on the discharged debt.[2] The entire consideration

---

2. Where the amount to be paid exceeds the value of the lien, or there is some other additional

unaccounted for consideration, the consideration

**464**

is based on the independent value of the lien interest purchased.

The holding, in this proceeding, squares with Plaintiff's underlying theory of the case, argued from the beginning. It does not conflict with any decision applicable to this jurisdiction, known to the Court. And, it was the basis for denial of Defendant's motion for summary judgment, brought early in the case. Defendant can hardly claim unfair surprise.

## III.

### AMENDED FINDINGS.

■ Defendant seeks amended findings, claiming that the Court's recitation on the record was insufficient to support the Court's conclusions. However, the stipulated facts filed with the Court pursuant to the trial order, established *prima facie* liability of Defendant on the note. Defendant offered no evidence in support of his theory that the obligation was a reaffirmation of a discharged debt.[3]

In reviewing the transcript of the findings and conclusions, the Court notes that on page 5, line 11, reference to the term "reaffirmation" was inadvertent. Reference was intended to be to the term "agreement." The findings should be amended to reflect the term "agreement." In all other respects, the findings and conclusions should be preserved.

## IV.

### AMENDED JUDGMENT.

■ 11 U.S.C. § 542(b) provides:

542. Turnover of property to the estate

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

Defendant argues that the statute should be construed to provide only legal, not equitable, relief regarding the note; and, that Plaintiff's remedy should be stated as a money judgement on the note. The argument is not persuasive.

■ Actions for turnover are core proceedings. See: 28 U.S.C. § 157(b)(2)(E). Core proceedings are those matters that bankruptcy judges have the statutory authority, by referral from the district court, to hear and finally determine, subject to appeal. See: 28 U.S.C. § 157, generally. The statute was enacted in response to *Northern Pipeline v. Marathon,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon,* the Supreme Court ruled that non-Article III bankruptcy judges were not constitutionally empowered to determine pre-petition non-bankruptcy causes of action held by debtors against third parties. Congress had statutorily vested non-Article III bankruptcy judges with the authority under *The Bankruptcy Reform Act of 1978.*[4] See: 28 U.S.C. § 1471 (1976 ed., Supp. IV).

*Marathon* involved a state law breach of contract action brought by plaintiff debtor Northern Pipeline against defendant Marathon, based on a pre-petition claim. The trustee attempted to litigate the action in the bankruptcy court. The defendant challenged, on constitutional grounds, the authority of the non-Article III bankruptcy judge to decide the matter. The bankruptcy judge ruled that he had the authority. The district court reversed, concluding that there existed no constitutional authority for a non-Article III judge to decide the action. The Supreme Court, on direct appeal from the district court, agreed with the district court, stating:

---

might well be, in part, based on the discharged debt.

**3.** Defendant focuses on lack of specific findings regarding when, if at all, the lien was released in connection with the transaction. However, whether the lien was released, or retained as security for payment of the note, is irrelevant.

**4.** Under the *Bankruptcy Reform Act of 1978,* bankruptcy courts were created as courts of record, "adjunct" to the district courts. The judges were appointed to 14–year terms; they were subject to removal by the circuit judicial councils; and, their salaries were subject to statutory reduction. See: 28 U.S.C. §§ 151, 152, 152, 153, 154 (1976 ed., Supp. IV).

[the] cases before us, which center upon appellant Northern's claim for damages for breach of contract and misrepresentation, involve a right created by state law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court. [FN36 omitted] Accordingly, Congress' authority to control the manner in which that right is adjudicated, through assignment of historically judicial functions to a non-Art. III "adjunct," plainly must be deemed at a minimum. Yet it is equally plain that Congress has vested the "adjunct" bankruptcy judges with powers over Northern's state-created right that far exceed the powers that it has vested in administrative agencies that adjudicate only rights of Congress' own creation ... Unlike the administrative scheme that we reviewed in Crowell, the Act vests all "essential attributes" of the judicial power of the United States in the "adjunct" bankruptcy court.

*Northern Pipeline v. Marathon,* 458 U.S. 50, 84, 102 S.Ct. 2858, 2878.

The Supreme Court went on to hold that the jurisdictional scheme of *The Bankruptcy Act of 1978,* was unconstitutional in that it had:

[impermissibly] removed most, if not all, of "the essential attributes of the judicial power" from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts.

*Id.* at 87, 102 S.Ct. at 2880.

28 U.S.C. § 157 was part of a jurisdictional scheme, subsequently enacted through *The Bankruptcy Reform Act of 1984,* to remedy the jurisdictional defects of *The Bankruptcy Reform Act of 1978,* which had created the jurisdictional provisions that the Supreme Court struck down in *Marathon.* See: 28 U.S.C. §§ 1334 and 157.

Bankruptcy judges remain non-Article III judges. An Interpretation of 28 U.S.C. § 157(b)(2)(E) and 11 U.S.C. § 542(b), such that they vest bankruptcy judges with statutory authority to determine nonbankruptcy pre-petition causes of action held by trustees against third parties, would seem to render 11 U.S.C. § 542(b) unconstitutional under *Marathon.* A nonbankruptcy pre-petition cause of action on a note against a third party is, for purposes of jurisdictional analysis, no different than a nonbankruptcy pre-petition cause of action on contract.

Rather, 28 U.S.C. § 157(b)(2)(E) and 11 U.S.C. § 542(b) should be interpreted to provide trustees with the bankruptcy remedy of turnover actions for debts, as property of bankruptcy estates, where: the debts are matured, payable on demand, or on order; and, where they are not subject to any nonbankruptcy defenses other than set off. Arguably, such actions directly involve estate administration and restructuring of debtor-creditor relations; and are equitable proceedings that bankruptcy judges apparently have the constitutional authority to decide.[5] Accordingly, the appropriate form of the judgments is in the nature of injunctive relief based on orders for turn over.

## V.

### DISPOSITION.

Based on the forgoing, it is hereby **ORDERED:** Defendant's motion is denied in all respects, except that the Courts findings recited orally on the record at conclusion of the trial are amended to substitute the term "agreement" for "reaffirmation" on page 5, line 11, of the transcript of the findings and conclusions produced and filed in connection with Defendant's motion.

---

5. Defendant does not claim that the constitutional reach of 28 U.S.C. § 157(b)(2)(E) and 11 U.S.C. § 542(b) does not extend, under any circumstances, to actions to recover on matured promissory notes.