OPINION
COOK, Circuit Judge.
This appeal concerns a debtor’s claim that a creditor interfered with the “fresh start” guaranteed by the debtor’s Chapter 7 bankruptcy. The bankruptcy court held that certain debt owed by Richard Rajotte to William Carter was a post-petition indebtedness supported by consideration independent of his discharged debt, not discharged by his bankruptcy, and thus enforceable against him. The court also denied Rajotte’s motion to find Carter in contempt. The district court affirmed the bankruptcy court decision. We AFFIRM the judgment of the bankruptcy court.
I. Background
The controverted debt derives from a series of transactions involving Rajotte, his first wife Fran, his second wife Marge, and Marge’s brother Carter. Our examination of the relevant transactions begins with Rajotte and Fran’s divorce that obligated Rajotte to pay the second mortgage on the marital residence and child support. For her part, Fran gave Rajotte a balloon promissory note in the amount of $21,340.75 (“Fran note”), secured by a Deed of Trust to compensate Rajotte for his share of the equity in the marital residence.
Rajotte remarried in 1982 and during that marriage to Marge, sister of the creditor here, several transactions pertinent to this dispute occurred. In 1984 Rajotte applied for a loan of $43,458.80 for his business, Chemex, from a local bank (Chemex loan). The bank required that Rajotte both sign a promissory note, and pledge as collateral the Fran note and the corresponding Deed of Trust on Fran’s home. The bank also required Rajotte to obtain personal guarantors; Marge and Carter guaranteed repayment of the Chemex loan should Rajotte default.
Rajotte eventually did default on the Chemex loan and he and Marge each filed for bankruptcy protection under Chapter 7 and obtained discharges in 1988. Their petitions scheduled the Chemex loan but omitted any reference to Carter. Rajotte testified that Marge’s family embarrassment together with his and her shared belief that excluding Carter would prevent a discharge of their debt to him, motivated their choice to avoid listing him or disclosing the bankruptcy to him, all with the hope and expectation of repaying him eventually. Rajotte testified that he viewed repaying Carter as a moral obligation.
During this time frame, with the Rajottes in bankruptcy, the bank looked to Carter as guarantor to repay the Chemex loan. After Carter paid the full $43,458.80 debt to the bank, it assigned to Carter the Chemex note plus its security-the Fran note and the accompanying Deed of Trust.
In 1991 when the Fran note matured, Carter as holder of the note and Deed of Trust, filed an action to foreclose on Fran’s residence. This circumstance coincided with other financial problems stemming from the Kajotte-Fran marriage dissolution. Fran and Rajotte were already litigating the matter of Rajotte’s delinquent child support payments in domestic relations court. Rajotte had been briefly jailed in the past for such delinquency.
Considering the financial predicaments he and Fran found themselves in, Rajotte devised a settlement plan whereby Fran could save her home from foreclosure, Ra *31 jotte would be relieved of his past due child support obligation to Fran, and Carter would receive some cash and a commitment from Rajotte to pay the balance of the Chemex loan plus interest in full. Rajotte, Carter, and Fran agreed to a tripartite deal as follows:
1. Carter, as the holder of the Fran note, accepted $9,087.41 in cash from Fran in full satisfaction of the $21,340.75 note and discharged the deed of trust on her residence— foregoing approximately $12,000 of the note’s value.
2. Fran released Rajotte from his debt to her for delinquent child support in exchange for Carter agreeing not to pursue approximately $12,000 on the note he held. This $12,000 forbearance by Carter (the difference between the amount of the note and the $9,087.41 Fran paid in full satisfaction of the note) inured directly to Rajotte’s benefit.
3. Rajotte agreed to repay Carter, as holder of the original Chemex note, the full value of that note including accumulated interest.
Rajotte never did pay as agreed. Only in 1995 did he begin to pay — usually about one hundred dollars per month — an amount insufficient to cover even the interest on the obligation. This slow rate of repayment eventually caused Carter to sue Rajotte in the Tennessee Chancery Court claiming Rajotte owed him over $90,000— the aggregate of the Chemex loan, interest, and the child support loan amount. Two days after the court served Rajotte with the complaint, Rajotte’s attorney notified Carter that the Chemex debt had been discharged in Rajotte’s Chapter 7 bankruptcy ten years earlier and requested that the collection efforts cease.
Following eight months of repeated demands to dismiss the chancery case because it sought to recover a discharged debt, Rajotte moved the bankruptcy court to hold Carter in contempt of the bankruptcy discharge injunction that protects bankrupts from collection efforts by former creditors. In response, Carter dismissed the state court case and he and his sister Marge[1] filed an adversary proceeding in bankruptcy court to determine the dischargeability of the debt, which the bankruptcy court consolidated with the contempt motion.
At trial, Rajotte claimed that because Carter’s role in the tripartite agreement depended at least in part on Rajotte’s promise to repay the discharged Chemex debt, the tripartite agreement violated the bankruptcy court’s discharge injunction and may not be enforced. Carter, in response, urged that his funding of the $12,000 child support delinquency by his forbearance on collecting that amount through foreclosure represents new consideration, independent of the discharged debt, and permits him to enforce his claim for that amount.
After closing arguments in the case, the bankruptcy court ruled from the bench that no independent consideration supported the tripartite agreement, Carter could not enforce it, and his collection action contemptuously violated the § 524 bankruptcy discharge injunction. The court delayed entering its judgment pending additional briefing on the issue of sanctions. Then, eighteen months later, the bankruptcy court reversed its legal conclusions drawn from the same facts. With a Supplemental Findings of Fact and Con *32 elusions of Law and Judgment, the court decided that Rajotte’s post-petition debt of $12,253.43-the child support amount-was not discharged in Rajotte’s bankruptcy, though the Chemex-based debts were. The court likewise reversed its earlier contempt judgment by denying the motion to find Carter in contempt. Rajotte appealed and the district court affirmed the bankruptcy court’s amended ruling.
II. Standard of Review
This court reviews the bankruptcy court’s decision and not the district court’s decision. In re Eagle-Picher Industries, Inc., 285 F.3d 522, 526-27 (6th Cir.2002). We review the court’s findings of fact for clear error, all conclusions of law de novo, and we separate mixed questions of law and fact into their constituent parts and analyze each under the appropriate standard of review. Id. at 527.
III. The Tripartite Agreement
A.
Rajotte claims that the bankruptcy court should have invalidated the tripartite agreement since it amounted to a proscribed attempt at reaffirmation. Reaffirmation of a discharged debt is the exception to the general rule that a discharge relieves a debtor of all pre-petition debts and enjoins creditors from attempting to collect discharged debts in whole or in part. 11 U.S.C. § 524 (2003). To be enforceable post-petition, parties must reaffirm any discharged debt according to the reaffirmation requirements set forth in 11 U.S.C. § 524(c).
Because the tripartite agreement was not reaffirmed according to § 524 requirements — not entered into before the discharge and not filed with the court — Carter may enforce the agreement only if consideration entirely independent of the discharged Chemex debt supports it. In that event, Carter may seek repayment of that amount from Rajotte without violating the bankruptcy code.
B.
We review the consideration supporting the tripartite agreement by examining the bankruptcy court’s relevant factual findings for clear error:
1) “Mr. Carter was not aware of the bankruptcy proceedings of the Rajottes” when he entered into the tripartite agreement;
2) Rajotte “devised a plan whereby Fran would be able to save her home and he would be relieved of child support — -of the arrearage on child support.”
3) “Mr. Carter allowed Mr. Rajotte to use over $12,000 of the collateral’s [the Fran note’s] value to pay Mr. Rajotte’s debt for back child support. When Mr. Carter did this, he thought he could collect the $12,253.43 from Mr. Rajotte directly.”
4) “There [are] documentary indications that Mr. Rajotte considered this $12- or $13,000 that was a forgiveness by Mr. Carter of Fran’s note, which in essence equaled the child support, to be a loan separate and apart from the Chemex obligation.”
J.A. at 227, 680, 681.
Record evidence supports each of these findings by the bankruptcy judge. And these findings support the legal conclusion that the consideration for the child-support-payment component of the tripartite agreement did not depend at all on the discharged Chemex loan.
Rajotte testified that he and Marge did not list Carter as a creditor in their bankruptcy schedules. Although Rajotte claims that Carter knew of the bankrupt *33 cies prior to the tripartite agreement from a conversation some five years earlier, Marge testified that she never told Carter about Rajotte’s bankruptcy and Carter testified that he did not know about the bankruptcies until be sued Rajotte in the chancery court. With two permissible views of the evidence, we cannot determine that the court clearly erred in choosing one view over the other. Anderson v. City of Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).
Likewise, the testimony of Rajotte and Carter supports the court’s second conclusion that Carter did not initiate the tripartite arrangement; Rajotte did. And as for the bankruptcy court’s third finding that Carter allowed Rajotte to use part of the collateral’s value to pay child support arrearages, the arithmetic of the tripartite agreement itself plainly confirms the allocation of more than $12,000 of the value of Carter’s note to that purpose. Rajotte testified when asked by the bankruptcy judge if he knew he was borrowing $12,000 to pay off the child support, that he understood that it would be “added to what I owed already and that way she’d [Fran] be gone and that would be paid off.” J.A. at 643. Also, Carter testified that he thought he “was helping [Marge and Rajotte] get straightened out over them finances,” and that “if [he] had known at that time that there had been a bankruptcy, [he] would not have continued to loan money.” J.A. at 505, 525. And supporting the bankruptcy court’s last conclusion-that this loan was separate from the Chemex obligation-is Rajotte’s testimony that even he believed this to be a second loan to help him pay his debts to Fran.
These facts confirm that a permissible view of the evidence supports the bankruptcy court’s conclusion that consideration untainted by dependence on discharged debt allows Carter to pursue repayment from Rajotte of the amount loaned — after his discharge — for satisfaction of Rajotte’s child support indebtedness. Rajotte admitted that he knew at the time he structured the tripartite agreement that he was borrowing some $12,000 to pay off the child support arrearage. Rajotte himself believed that he was still obligated on the Chemex loan; that the child support loan was meant solely to pay Rajotte’s debts to Fran.
C.
Though we agree that the bankruptcy court’s factual assessment of the tripartite agreement supports a decision to enforce the $12,000 component of the $90,000 debt, Rajotte directs us to a case that he argues undermines the bankruptcy court’s legal conclusion. In In re Watkins, 240 B.R. 668 (Bkrtcy E.D.N.Y.1999), after discharge, the creditor contacted the debtors and offered them a new loan conditioned on repayment of the previously discharged debts. By the terms of the new loan, debtors only received half of the amount borrowed and the creditor applied the other half to reducing the amount of the discharged debt. The Watkins court determined that part of the consideration for the new loan was the discharged debt; debtors received no consideration to support a finding of a new post-petition contract.
We find the case distinguishable and thus unpersuasive in demonstrating legal error by the bankruptcy court here. In contrast to Watkins, Carter, as creditor did not devise the agreement — Rajotte and Marge sought Carter’s help. The mission of the tripartite agreement was to satisfy Rajotte’s child support debts to Fran so that he could avoid jail. Such new consideration independent of the discharged Chemex loan distinguishes this ease from *34 Watkins. Carter and Rajotte, according to the court’s findings, considered the child support component of the tripartite agreement to be a separate loan to satisfy Rajotte’s debts to Fran and both Carter’s forbearance on the foreclosure and Rajotte’s relief from the prospect of jail, supply the independent consideration.
D.
Rajotte next urges us to focus on two documents that he claims evidence that the Chemex loan was at least part consideration for the tripartite agreement. He first directs us to the aggregation of the Chemex loan and the debt ($12,254.43) in Carter’s ledger. He claims that because Carter failed to treat these debts separately, the consideration cannot be entirely separate. The commingling of the two debts in the ledger does not sway our analysis. The bankruptcy court found, and we agree, that because Carter did not know of Rajotte’s bankruptcy, Carter had no reason to treat the two loans separately in his ledger. Though the ledger combines the two debts — to the extent that it reflects a running grand total — the trial testimony, exhibits, and stipulations confirm the facts underpinning the bankruptcy court’s legal conclusion that the child support loan exists apart from the Chemex loan.
Rajotte insists that Carter’s chancery court complaint specifically referencing the Chemex loan ought to have been enough to convince the bankruptcy court that the discharged debt infected all aspects of the tripartite agreement such that the court could not reasonably have determined that the child support loan did not depend in whole or in part on the Chemex loan. Yet this court, having found no clear error in the court’s factual basis for its decision, finds no firm ground in Rajotte’s argument (simply pointing to the inclusion of the Chemex loan in the chancery complaint) to overturn its legal judgment. The bankruptcy court confirmed that Carter may only collect the new post-petition debt— the child support loan — not the Chemex loan.
Rajotte next argues that the chancery suit necessarily sought repayment of discharged debt because Rajotte had paid Carter more than $12,000, an amount exceeding the new loan (he improperly counts Fran’s $9,087 payment) by the time Carter sued him. Carter credited payments Rajotte made to him (the ledger reflects an average of $100 paid per month for over three years) against the running balance due on the full amount because, again, Carter knew nothing of the bankruptcy. And given that the bankruptcy court settled here only the question of what debt Carter may pursue as enforceable post-petition debt, questions about allocating credit for these payments to the child support loan will be considered in any renewed state court proceeding to collect the debt.
We affirm the bankruptcy court’s determination that the tripartite agreement entitled Carter to collect the amounts he loaned Rajotte post-petition for new consideration.
IV. Contempt
Even though the tripartite agreement created an enforceable post-petition obligation, Carter sued in state court for $90,351.39, an amount much greater than that obligation. Both the bankruptcy court and the district court found that Carter did not contemptuously attempt to collect a discharged debt.
Rajotte claims that Carter clearly disregarded bankruptcy laws by filing and maintaining a state court lawsuit in violation of the discharge injunction, asking for sanctions and attorneys fees to be awarded *35 against Carter. We review the decision to deny Rajotte’s motion for contempt for an abuse of discretion, See In re Kisserberth, 273 F.3d 714, 720 (6th Cir.2001), mindful that a court must exercise its power to levy sanctions “with restraint and discretion.” In re Downs, 103 F.3d 472, 478 (6th Cir.1996).
We only overturn a bankruptcy court’s decision if we have a “definite and firm conviction” that the court committed a “clear error of judgment.” In re Kisserberth, 273 F.3d at 721. The bankruptcy court found that neither Carter nor his attorneys should be sanctioned for being too slow in getting to the right legal questions. The court held that “[ljawyers must have some leeway in litigating whether the discharge injunction applies without being in violation of the injunction for continuing to litigate.” J.A. at 196.
Much of the delay in Carter’s response to the notice of Rajotte’s bankruptcy was due to the actions of Rajotte and his attorney Roberts. When Carter filed the state court action, he did not know of the discharge injunction; the filing, therefore, could not have been determined to be contemptuous. N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 591 (6th Cir.1987) (requiring knowledge of the court order for a finding of contempt). Just days later, Rajotte’s attorney informed Carter’s attorney of the prior discharge, but in light of Rajotte’s prior concealment of the bankruptcy from Carter, it was logical, and even prudent for Tipps (Carter’s attorney) to request the discharge documents before dismissing the state court complaint. Further, it was Rajotte’s own concealment of the bankruptcy for more than a decade that complicated retrieval of the discharge documents. Tipps could not find proof of the discharge in the bankruptcy court clerk’s office and had to request a copy from the regional archives.
Also, if Rajotte had not concealed the bankruptcy, Carter would have known that the Chemex loan was discharged and would not have pursued collection of it by the state court complaint. Moreover, letters exchanged by the attorneys reveal that Rajotte’s attorney allowed Carter’s attorneys time to investigate the matter and promised to refrain from filing for contempt in the meantime. J.A. at 123, 124, 136. Then for months, Rajotte’s attorney waffled between demanding dismissal of the state court lawsuit and allowing Carter’s attorney more time to review the file. J.A. at 125, 136.
We do not find that the decision to deny Rajotte’s motion for contempt was a “clear error of judgment” because the record includes facts supporting the bankruptcy court’s judgment that Carter did not clearly disregard bankruptcy laws. Rajotte’s own actions hindered Carter’s attorneys in determining whether Carter could collect any of the debts from Rajotte. And though the bankruptcy court decided that the chancery court action pursued the Chemex loan in violation of the discharge injunction, it also decided that the bankruptcy injunction did not bar Carter from pursuing a component of that claim. Rajotte’s discharge did not enjoin collection of the child support debt.
V. Conclusion
We affirm the judgment of the bankruptcy court.

. Although Rajotte names Marge as an appellee, his pleadings neither argue any breach by her nor seek relief from her.