# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3085

_____

Venture Bank

*Appellant*

v.

Howard L. Lapides

*Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 9, 2015
Filed: August 25, 2015

_____

Before LOKEN, BYE, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Howard Lapides (Howard) and his wife, Mary Holter-Lapides (collectively, "the Lapideses"), renewed a loan from Venture Bank secured by a third mortgage on their home. Howard subsequently filed for Chapter 7 bankruptcy. After Howard's personal debts were discharged, the Lapideses executed two "Change in Terms Agreements," each of which extended the maturity date of the loan for six months.

When Howard ceased making payments under these agreements, Venture Bank filed suit in Minnesota state court seeking, among other relief, a declaratory judgment that the agreements were valid and enforceable. The Lapideses removed the suit to bankruptcy court, and Howard asserted in a counterclaim that Venture Bank's efforts to obtain payments after his discharge violated the discharge injunction. See 11 U.S.C. § 524(a)(2). After a trial, the bankruptcy court[1] entered judgment denying Venture Bank's claim for a declaratory judgment and awarding Howard damages and attorney's fees on his counterclaim. Venture Bank appeals the district court's[2] decision affirming the bankruptcy court. Reviewing the bankruptcy court's factual findings for clear error and its conclusions of law *de novo*, we affirm. In re M & S Grading, Inc., 526 F.3d 363, 367 (8th Cir. 2008) (standard of review).

## I. Background

On August 30, 2007, Howard as President of his seafood import business signed a secured $400,000 promissory note evidencing a revolving line-of-credit loan by Venture Bank. Part of the collateral was a third mortgage on the Lapideses' home. Bank of America and Citizens Bank held the prior mortgages. In March 2008, the Lapideses signed a new $400,000 promissory note (number 12897) amending and restating the prior loan at a lower rate of interest. In September and November 2008, the Lapideses as borrowers signed Change in Terms Agreements extending the maturity date and modifying the credit terms of loan 12897. They signed a new promissory note (number 13317) in the amount of $357,456.35 in February 2009 providing that final payment was due three months later, and a new promissory note

---

[1]The Honorable Anita L. Shodeen, United States Bankruptcy Judge for the Southern District of Iowa, sitting in the District of Minnesota by designation.

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

(number 13440) for $345,644 on June 30, 2009, payable on August 2, 2009. All notes and agreements were secured by the third mortgage on their home.

Howard filed for Chapter 7 bankruptcy protection on August 11, 2009. On October 12, Howard met with Venture Bank's president, Michael Zenk, and loan officer Nathan Urfer to discuss Venture Bank refinancing all three mortgages so the Lapideses could keep their home. Howard agreed to pay $3000 per month on loan 13440 to reestablish his credit with the Bank. On November 9, the Lapideses signed a Debt Re-Affirmation Agreement in which they promised to make five monthly payments of $3000, followed by payment of the outstanding principal and interest on May 9, 2010, and Venture Bank agreed to permit the Lapideses "the continued use and possession" of their home. Although Howard and Venture Bank knew the Re-Affirmation Agreement was unenforceable because Howard's bankruptcy attorney refused to sign the Agreement and it was never filed with the bankruptcy court, see 11 U.S.C. § 524(c), Howard continued to make regular loan payments to the Bank.

Howard's personal debts were discharged on November 16, 2009. On May 9, 2010, and November 9, 2010, the Lapideses executed Change in Terms Agreements extending the maturity date of Note 13440 to Venture Bank by six months. Each Agreement provided for payment in five monthly installments of $3500 followed by a final payment of the unpaid balance. Howard testified that he understood these agreements reflected the understanding reached at the October 12, 2009, meeting that he would make regular loan payments to reestablish his credit with Venture Bank to induce the Bank to refinance his three mortgages. The Lapideses made twelve $3500 payments to Venture Bank between June 2010 and May 2011. During this time, loan officer Urfer sent Howard numerous emails reminding him that payments were due and asking him to pay additional principal and accrued interest. Venture Bank never refinanced the mortgages. Howard ceased making monthly payments in May 2011.

In July 2011, Venture Bank sued the Lapideses in state court, asserting a claim against borrower Holter-Lapides under the November 9, 2010, Change in Terms Agreement; foreclosure of the Bank's third mortgage on the Lapideses' home; and a declaratory judgment that the Change in Terms Agreement was enforceable against Howard. The Lapideses removed the case to bankruptcy court, and Howard filed a counterclaim for damages, alleging that Venture Bank's efforts to obtain loan payments after his debts were discharged violated the discharge injunction imposed by 11 U.S.C. § 524(a)(2). Citizens Bank, holder of the second mortgage, foreclosed on the Lapideses' home and it was sold at public auction in December 2012. Venture Bank received none of the sale proceeds.

After the bankruptcy court remanded Venture Bank's claim against Holter-Lapides and the foreclosure claim to state court, the parties filed cross motions for summary judgment on the retained claims. In denying Venture Bank's motion for summary judgment and setting the case for trial, the bankruptcy court ruled that, to be valid and enforceable, the post-discharge Change in Terms Agreements must *either* comply with the requirements of a reaffirmation agreement under 11 U.S.C. § 524(c), which they admittedly did not do, *or* they must contain "all of the essential elements of a contract" under state law. After trial, the court concluded that the post-discharge agreements did not meet two essential elements of a valid and enforceable contract, consideration and mutual assent. The court further found that all monthly payments made by Howard after the first Change in Terms Agreement were involuntary, see § 524(f), and Venture Bank's efforts to obtain those payments violated the discharge injunction. The district court affirmed, concluding the post-discharge agreements lacked consideration because Venture Bank did not provide the Lapideses new consideration and Venture Bank had violated the discharge injunction. Correcting an error in calculating the number of monthly payments, the district court increased the damage award to $42,000. Venture Bank appeals.

## II. Discussion

A bankruptcy discharge extinguishes only the debtor's personal liability; a secured creditor's right to foreclose on loan collateral, such as a mortgage on the debtor's residence, "survives or passes through the bankruptcy." Johnson v. Home State Bank, 501 U.S. 78, 83 (1991). When a debtor's schedule of assets includes debts secured by property of the bankruptcy estate, the debtor must file a statement of his intent to surrender or retain the property and, if he elects to retain non-exempt property, whether he will redeem the property (i.e., pay off the secured loan before discharge) or "reaffirm debts secured by such property." 11 U.S.C. § 521(a)(2)(A); see In re Pratt, 462 F.3d 14, 18-19 (1st Cir. 2006) .

### A. Validity of the Post-Discharge Agreements

"A reaffirmation agreement is one in which the debtor agrees to repay all or part of a dischargeable debt after a bankruptcy petition has been filed." In re Duke, 79 F.3d 43, 44 (7th Cir. 1996). Prior to 1978, the Bankruptcy Act looked to state law to determine the validity of reaffirmation agreements. In many States, the moral obligation to repay a discharged debt was regarded as sufficient consideration. See In re Bennett, 298 F.3d 1059, 1066 (9th Cir. 2002). In the 1978 Bankruptcy Code, Congress sought to equalize the unequal bargaining positions of experienced creditors and unsophisticated bankruptcy debtors by enacting § 524(c) of the Code, which provides in relevant part:

> (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law . . . only if --
>
> (1) such agreement was made before the granting of the discharge . . . ;

> (2) the debtor received the disclosures described in subsection (k) . . . ;
>
> (3) such agreement has been filed with the court . . . .

Section 524(c) "reflects Congress's intent to . . . safeguard[] debtors against unsound or unduly pressured judgments about whether to attempt to repay dischargeable debts." In re Jamo, 283 F.3d 392, 398 (1st Cir. 2002).

Under § 524(c), reaffirmation agreements are enforceable only if they are enforceable under state law *and* meet the requirements of federal law in § 524(c). See, e.g., Bennett, 298 F.3d at 1066. Thus, the bankruptcy court erred in ruling that the Change in Terms Agreements are valid if **either** (1) "the post-petition agreements comply with the requirements of 11 U.S.C. section 524(c) *or* (2) all of the essential elements of a contract are present in the post-petition agreements." If the Agreements violate § 524(c), they are unenforceable as a matter of federal law, whether or not they would be enforceable under applicable state law contract principles.

It is undisputed that the post-discharge Change in Terms Agreements were not enforceable § 524(c) reaffirmation agreements, most obviously because they were entered into after Howard's bankruptcy discharge and were not filed with the bankruptcy court. Venture Bank argues, however, that the agreements are nonetheless valid because they are supported by consideration separate from Howard's discharged personal debt. The Bank had a right to foreclose on the family home after Howard's discharge lifted the automatic stay in bankruptcy, and its agreement not to foreclose was adequate consideration under Minnesota law and protected co-borrower Holter-Lapides (who did not file for bankruptcy) from a deficiency judgment.

As we have explained, we need not consider whether a promise not to foreclose on a mortgage is adequate consideration under Minnesota law if the Change in Terms Agreements were contrary to § 524(c). The Agreements served no purpose other than reaffirmation agreements in which Howard agreed to repay all of his discharged personal debt. The Agreements were titled Change in Terms; like the pre-petition Change in Terms Agreements, the change in terms extended the maturity date of "Promissory Note #13440," a pre-petition debt. The Agreements contained Howard's promise to pay the unpaid principal balance of note 13440 and described the pre-petition collateral Howard provided for note 13440, including his personal residence. Like Howard's prior post-petition voluntary payments, the Agreements were entered into to induce Venture Bank to refinance the Lapideses' heavily mortgaged residence. They were not part of a complex refinancing; rather, they incorporated the terms of the parties' failed attempt to fashion an enforceable § 524(c) reaffirmation agreement prior to Howard's discharge. Instead of continuing to accept Howard's voluntary payments, a post-discharge arrangement both parties were free to continue, Venture Bank insisted that Howard again promise to repay the entire discharged personal debt in order to continue the refinancing negotiations.

When a post-discharge agreement does nothing but obligate a debtor to repay a discharged debt, it is inconsistent with § 524(c), a statute declaring that agreements removing specific personal debts from the benefits of discharge must be negotiated and filed with the court before discharge, when a debtor has the protection of his bankruptcy attorney and the bankruptcy court. Venture Bank relies on In re Heirholzer, 170 B.R. 938, 940-41 (Bankr. N.D. Ohio 1994), which held that a secured creditor's post-discharge promise to forbear from foreclosing on a mortgage was "new and sufficient consideration to support a binding post-discharge obligation" to repay the discharged secured debt. Like the bankruptcy court and our sister circuits that have considered Heirholzer's holding, we instead conclude that a secured creditor's post-discharge forbearance is not sufficient to take a reaffirmation

-7-

agreement outside the purview of § 524(c).  See In re Am. Rice, Inc., 448 F. App'x 415, 420 (5th Cir. 2011); In re Lopez, 345 F.3d 701, 710 (9th Cir. 2003).

When post-discharge agreements have included significant contractual terms going well beyond the debtor's promise to pay all or part of a discharged pre-petition debt, unlike the Change in Terms Agreements in this case, we find the prior case law and expert commentary replete with irreconcilable conflict and confusion.  Some cases, like our decision in DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022-23 (8th Cir. 2002), have upheld payments under a voluntary post-discharge agreement involving new collateral despite the lack of a pre-discharge § 524(c) reaffirmation agreement.  Other cases have declined to void a broad new post-discharge agreement but have declared unenforceable terms in which the debtor promised to pay a discharged debt.  See In re Rajotte, 81 F. App'x 29, 33-34 (6th Cir. 2003); In re Smith, 224 B.R. 388, 398-99 (Bankr. N.D. Ill. 1998).  Other authorities have broadly asserted, without analyzing the meaning of the word "dischargeable" in § 524(c), that a post-discharge agreement to pay a discharged debt "is without legal effect."  4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 524.04 at 524-41 (16th ed. 2015).  We decline to take a position on the appropriate legal standard for deciding these more difficult cases.  We simply conclude that the post-discharge Change in Terms Agreements are unenforceable because they were nothing more than reaffirmation agreements that did not comply with § 524(c).

### III. Violation of the Discharge Injunction

As the bankruptcy court and the district court recognized, Venture Bank did not necessarily violate the discharge injunction simply because it accepted monthly payments made pursuant to Change in Terms Agreements that are unenforceable. Discharge "operates as an injunction against . . . an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor."  11 U.S.C. § 524(a)(2). But discharge does not "prevent[] a debtor from voluntarily repaying any debt."

-8-

§ 524(f). After trial, the bankruptcy court concluded that Venture Bank violated the discharge injunction because the "Bank's communications and post-petition conduct were designed to obtain payments and enforce the debt" and therefore Howard's monthly payments under the post-discharge Change in Terms Agreements were involuntary.

On appeal, Venture Bank argues that the bankruptcy court's finding of involuntariness was clearly erroneous because Howard testified at trial that he made the payments "voluntarily" to induce the Bank to refinance his mortgages, and because Howard, not the Bank, initiated discussions about making payments for that purpose.[3] We disagree. "Voluntary" as used in § 524(f) is defined "in an objective sense as referring to repayment that is free from creditor influence or inducement, regardless of whether the debtor was motivated by forces unrelated to the creditor." DuBois, 276 F.3d at 1023 (quotation omitted). The term must be understood in the context of a discharge injunction that "is intended to preclude virtually all actions by a creditor to collect personally from the debtor." In re Nassoko, 405 B.R. 515, 521-22 (Bankr. S.D.N.Y. 2009) (quotation omitted). "[T]he 'coerciveness' involved in each case must be assessed on its particular facts." In re Pratt, 462 F.3d at 20.

Here, ample evidence of pressure and inducement supports the bankruptcy court's finding of involuntariness. The Bank encouraged Howard to believe that, *if* he made regular payments, it would consider helping him refinance his home. It then

---

[3]Venture Bank did not argue to the bankruptcy court, and does not argue on appeal, that its conduct in seeking payments from Howard was protected by § 524(j), which states that § 524(a)(2) "does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if (1) such creditor retains a security interest in real property that is the principal residence of the debtor; (2) such act is in the ordinary course of business between the creditor and the debtor; and (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien." Accordingly, we need not consider this fact-intensive issue.

required him to sign agreements obligating him to repay the entire discharged debt, rather than continue to make monthly payments, and sent numerous emails reminding him that payments were "due" and seeking payment of additional principal and interest. The Bank's "Marginal & Substandard Loan Improvement/Workout Plan" listed as an "action item" that the Bank "[k]eep the pressure on [Howard] for principal reductions." Unlike DuBois, where post-discharge fees from a pre-petition automobile lease were folded into a new lease, 276 F.3d at 1021, Venture Bank did not refinance the three mortgages on the Lapideses' home. It simply dangled the possibility of refinancing to induce Howard to sign agreements promising to repay the entire discharged debt. The bankruptcy court did not clearly err in finding that Howard's payments were not voluntary within the meaning of § 524(f). Accordingly, the district court did not err in affirming the bankruptcy court's decision that Venture Bank violated the discharge injunction.

The judgment of the district court is affirmed.

_____