# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1904
_____

First State Bank of Roscoe; John R. Beyers

*Appellant*s

v.

Brad Allen Stabler; Brenda Lee Stabler

*Appellee*s
_____

Appeal from United States District Court
for the District of South Dakota - Aberdeen
_____

Submitted: May 16, 2018
Filed: January 30, 2019
_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.
_____

MELLOY, Circuit Judge.

First State Bank of Roscoe (the "Bank") and John R. Beyers appeal the judgment of the district court[1] affirming a bankruptcy court order holding them in

---

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota, affirming the order of the Honorable Charles L. Nail, Jr., United States Bankruptcy Judge for the District of South Dakota.

contempt and sanctioning them for violating a final bankruptcy discharge injunction. The Bank and Beyers argue on appeal that an earlier bankruptcy court order and related state-court judgments have preclusive effect and bar the current contempt order. They also argue that even if preclusion doctrines do not otherwise bar relief, they held a good faith belief that prevailing law permitted their conduct such that sanctions are inappropriate. We affirm.

I.

Brad and Brenda Stabler (the "Stablers") borrowed from the Bank to fund an agricultural services business. Beyers was a principal at the Bank. When the Stablers' business failed, the Stablers liquidated their business, and Beyers counseled them to seek bankruptcy protection. In the bankruptcy, the Stablers' attorney (whom Beyers recommended to the Stablers and who previously served as attorney for the Bank) failed to list all debt owed by the Stablers to the Bank. The Stablers owed the Bank over $600,000, but the bankruptcy schedules listed the Bank as a secured creditor claiming much less than that amount. In addition to personal loan guarantees from the Stablers, the Bank held priority liens against the Stablers' land and farm machinery as well as a lien on land owned by Brad Stabler's parents. It is undisputed that the liens, in total, were insufficient to secure fully the Stablers' pre-bankruptcy indebtedness to the Bank.

After the Stablers received their bankruptcy discharge, the Bank continued to hold security interests on the Stablers' land and equipment and on Brad's parents' land. Rather than foreclosing on this collateral (and realizing a substantial loss), the Bank and Beyers obtained from the Stablers and Brad's parents a commitment to pay a new $650,000 note, an amount substantially in excess of the security interests that had survived bankruptcy. The Bank and Beyers obtained this commitment without court approval and through a series of transactions and debt transfers involving third parties. Specifically, the four Stablers became obligated on a $416,000 note to a

-2-

partnership named Schurrs, a $213,000 note to Roger Ernst, and a $21,000 note to a company named H&K Acres. These three other parties had relationships with Beyers or the Bank and received from the Bank assignments of security interests. Eventually, the Stablers paid off the $21,000 note, and Beyers received the other notes and related security interests by assignment. Later, acting as a guarantor, Beyers helped the Stablers obtain a $150,000 loan from Ipswich State Bank ("Ipswich" and "Ipswich Note") secured by the Stablers' property. The Stablers used this additional $150,000 to pay the Bank, but the parties dispute whether this payment to the Bank was for discharged debt or post-discharge debt. Eventually, Beyers obtained assignment of the Ipswich Note and related security interests from Ipswich.

Next, the Stablers fell behind on their payments, and the Bank and Beyers commenced collection efforts. In response, the Stablers and Brad Stabler's parents initiated a state-court action seeking a determination of what they owed the various lenders. In the state-court action, they alleged the post-bankruptcy commitments were unenforceable improper reaffirmations of discharged debt. They also alleged claims of fraud, breach of fiduciary duty, and conspiracy, asserting the Bank and Beyers knew the debt refinanced with the $650,000 note had been discharged but misrepresented that the discharged amounts were still owed.

The Bank and Beyers asserted four counterclaims. They argued that forbearance from foreclosing on the security interests that had survived discharge served as permissible consideration for new security interests and repayment commitments. Based on these arguments, Beyers and the Bank asserted that the reaffirmed debt was enforceable. Beyers and the Bank invited the state court to determine what debt had and had not been discharged in bankruptcy, and they characterized their enforcement efforts as relating only to debt that the state court might determine not to have been discharged. In fact, in their state court counterclaims, Beyers and the Bank indicated they were seeking to collect only on non-discharged debt.

Looking specifically at the Bank and Beyers's counterclaims, Counterclaims 1 and 2 sought to collect on the Ipswich Note and foreclose on the collateral for that loan. Counterclaims 3 and 4 involved the $650,000 note that was approximately equal in amount to what the Stablers owed Beyers and the Bank prior to bankruptcy.

Beyers and the Bank moved for summary judgment on Counterclaims 1 and 2. After Beyers and the Bank filed their motion for summary judgment in the state court, but before the state court had ruled on the motion, the Stablers filed an adversary complaint in the bankruptcy court (a complaint the parties later conceded could be deemed a motion for sanctions) seeking contempt sanctions against Beyers and the Bank and alleging violation of the discharge injunction. The state court then granted summary judgment to the Bank and Beyers on Counterclaims 1 and 2, holding the Stablers had entered into the Ipswich Note after bankruptcy and had used the proceeds to pay off security interests that survived bankruptcy. The state court held the Stablers were in default on the Ipswich Note such that Beyers could foreclose on that loan's collateral.

After the state court granted summary judgment on Counterclaims 1 and 2, the Bank and Beyers moved to dismiss the adversary complaint. In ruling on the motion to dismiss, the bankruptcy court entered an order with two seemingly inconsistent holdings. Looking at the Bank and Beyers's state-court pleadings in which those parties limited their request for relief to debt that had not been discharged, the bankruptcy court indicated that it appeared the Bank and Beyers were seeking relief related solely to permissible loans and not related to impermissible reaffirmations of discharged debts. The bankruptcy court also indicated that the state-court grant of summary judgment regarding Counterclaims 1 and 2 (the counts concerning the Ipswich Note) appeared to have preclusive effect. Based on these observations, the bankruptcy court appeared to grant the motion to dismiss for failure to state a claim.

-4-

The bankruptcy court also held, however, that the state court possessed jurisdiction and authority to make discharge determinations. As such, the bankruptcy court expressly abstained from ruling on the motion to dismiss and noted that the Stablers could return to the bankruptcy court if the state court were to determine the Bank or Beyers had impermissibly attempted to collect discharged debt. In reaching this determination, the bankruptcy court expressed skepticism that the Stablers might achieve any such result in state court. Nevertheless, the bankruptcy court abstained and expressly left open the possibility of the Stablers later returning to the bankruptcy court.

The Stablers appealed to the Bankruptcy Appellate Panel ("BAP") as to both issues, and the BAP affirmed. Stabler v. Beyers (In re Stabler), 418 B.R. 764, 766 n.2, 769–71 (B.A.P. 8th Cir. 2009). The BAP, however, addressed only the issue of abstention. No party sought from the BAP further analysis or explanation as to the bankruptcy court's apparent granting of the motion to dismiss on the merits.

Meanwhile, the state-court action proceeded. The state court granted summary judgment for the Stablers on Counterclaims 3 and 4 and reversed its own earlier grant of summary judgment to Beyers and the Bank on Counterclaims 1 and 2. As to Counterclaims 3 and 4, the state court determined the $650,000 note was an unenforceable reaffirmation of discharged debt. The court found Beyers had "concocted a transaction" involving third parties for the purposes of recreating discharged debt. The court also found Beyers did so without good faith and in an effort to overcome the bankruptcy discharge. These determinations also led the court to conclude that a question of material fact existed as to whether Beyers could enforce the Ipswich Note at issue in Counterclaims 1 and 2.

Prior to trial, the Stablers dropped their fraud claim and elected to seek rescission of the $650,000 note. The Stablers' attorney indicated at the state-court pretrial hearing that they would seek attorney fees in bankruptcy court rather than in

state court. Issues remaining for trial, therefore, included the Stablers' claim for rescission of the $650,000 note, the enforceability of the Ipswich Note, and a fraud claim asserted by Brad's parents. In their fraud claim, Brad's parents alleged Beyers obtained their signature on the $650,000 note by falsely misrepresenting to them that Brad owed much of the debt underlying that note even though it had been discharged in bankruptcy. Brad's parents' claim was tried to a jury. The Stablers' rescission claim and Counterclaims 1 and 2 were tried to a judge.

The jury returned a special verdict in Brad's parents' case, finding that $439,100 of the $650,000 note was obtained by fraud.

In the bench trial, the court entered a written order describing in detail its findings as to the events that led the Stablers to enter into the $650,000 post-discharge note. After introducing the parties and the initial debts, the court stated:

> Things did not go well with [the Stablers' business]. [The business] was being sued by various parties. John Beyers assessed the situation and realized that [the business] was doomed. More importantly, John Beyers realized that if the litigation was allowed to proceed, those other parties were going to obtain judgments against [the business]. Beyers realized that [the business] did not have sufficient assets to cover all of its liabilities and was essentially bankrupt. Being an astute and experienced businessman, Beyers saw the natural progression. Unless he took action, [the business] eventually would be forced into bankruptcy. He realized that [the Bank] was under-secured on the loans to Brad and Brenda Stabler and [the business]. In order to protect [the Bank's] interests, Beyer[s] arranged for Brad and Brenda Stabler to meet with Attorney Rob Ronayne about filing for bankruptcy.

> The evidence establishes that this bankruptcy was not Brad or Brenda's idea. This idea was solely that of John Beyers. John Beyers decided that Brad and Brenda Stabler should file bankruptcy. John Beyers personally decided who Brad and Brenda Stabler should use as

their bankruptcy attorney—Rob Ronayne. Rob Ronayne is an experienced bankruptcy attorney. Rob Ronayne also regularly served as an attorney for [the Bank]. John Beyers also knew this. John Beyers convinced Brad and Brenda Stabler that he was acting in their best interests. He was not and knew it. I find and conclude that John Beyers'[s] intention was to protect the financial interests of [the Bank].

John Beyers owns [the Bank]. John Beyers knew that if the lawsuits were allowed to proceed, [the business] and Brad and Brenda Stabler would eventually end up filing for bankruptcy. By maintaining their trust, encouraging them to file bankruptcy, and selecting their bankruptcy attorney, Beyers believed that he could control the situation so that the debts of other creditors could be discharged while the obligations to [the Bank] could be maintained or reassumed. Over the course of the next year, this is exactly what John Beyers and [the Bank] accomplished.

Brad and Brenda Stabler filed for and received discharge from bankruptcy court. The discharge eliminated Brad's personal guarantee of [the business] debt. [The Bank] still held security interests in Brad and Brenda Stabler's farm and machinery because such secured interests are not discharged by bankruptcy. [The Bank] still held a security interest worth approximately $110,000 over a quarter section parcel of land owned by [Brad's parents]. [The Bank] could have foreclosed on that quarter of land to recover on that debt. [The Bank] could have foreclosed on Brad and Brenda's land and other secured property. This course of action would have resulted in a significant shortfall for [the Bank]. [The Bank] would have recovered some money but would have taken a significant loss on the various loans of Brad and Brenda and [the business]. More importantly, [the Bank] would have had no further recourse against any of the Stablers. John Beyers understood this.

Instead of accepting such a loss, John Beyers devised a scheme through which he would convince Brad and Brenda Stabler to continue paying on their discharged debt. Alone, this would be practically useless because Brad and Brenda clearly did not have the resources to service the reaffirmed debt. It was only a matter of time before they

would default. John Beyers'[s] scheme included a plan to improve [the Bank's] security interests by convincing [Brad's parents] to sign increasingly larger mortgages to their entire farm in order to secure the debt of Brad and Brenda. This is exactly what transpired. As found by the jury and by this Court, $43[9,1]00 of the value of those mortgages was obtained by fraud on the part of John Beyers and [the Bank].

Stablers v. First State Bank of Roscoe, et al., Civ. No. 07-11 (S.D. Cir. July 8, 2013) (Memorandum Decision following court trial).

The state trial court concluded that Beyers had coerced Brad and Brenda into reaffirming their debt and that "[t]his type of behavior is exactly what the 'reaffirmation process' is intended to protect against." Id. at n.2. The court granted the Stablers' rescission of the $650,000 note, awarding the Stablers $142,908.27. Finally, the court described Beyers's behavior surrounding the Ipswich Note as dishonest and manipulative, but concluded Beyers could enforce that particular loan against the Stablers. On appeal, the South Dakota Supreme Court affirmed. Stabler v. First State Bank of Roscoe, 865 N.W.2d 466, 469 (S.D. 2015).

After the state appeal became final, the Stablers, as envisioned by the bankruptcy court and consistent with the Stablers' expressly declared intent in the state court, returned to the bankruptcy court. The Stablers sought attorney fees and a contempt sanction for violation of the discharge injunction. The Bank and Beyers argued the bankruptcy court's earlier order was res judicata and precluded any bankruptcy court sanction. The Bank and Beyers also argued the Stablers' failure to secure fees or sanctions in state court precluded any sanction order from the bankruptcy court. Finally, they argued sanctions were inappropriate because they had relied in good faith upon cases appearing to permit reaffirmations outside of bankruptcy in exchange for forbearance in foreclosing upon a security interest. The bankruptcy court rejected the Bank and Beyers's arguments and sanctioned each $25,000. And, in an extensive and careful analysis rejecting many claimed fees but

awarding others, the bankruptcy court imposed upon the Bank and Beyers joint and several liability for $ 159,605.77 in attorney fees. The Bank and Beyers appealed to the district court, which affirmed.

## II.

As a second reviewing court, we apply the same standards as the district court in our review of the bankruptcy court's order. See Contractors, Laborers, Teamsters & Eng'rs Health and Welfare Plan v. Killips (In re M & S Grading, Inc.), 526 F.3d 363, 367 (8th Cir. 2008). We generally review factual determinations for clear error and interpretations of law de novo. Id. In the absence of errors at law or clearly erroneous factual determinations, we review a sanctions award, including an award of attorney fees, for an abuse of discretion. See Williams v. King (In re King), 744 F.3d 565, 570 (8th Cir. 2014) ("The bankruptcy court was perfectly within its discretion to impose the sanction."). Appellants do not challenge the actual amounts of the sanction or fee award. Rather, they challenge the propriety of any award, presenting somewhat overlapping legal arguments addressing preclusion and their alleged good faith beliefs concerning the state of the law at the time they filed their counterclaims. We address their arguments in turn.

A. Preclusive Effect of the Bankruptcy Court's Abstention Ruling and of the Stablers' Failure to Seek Sanctions or Punitive Damages in State Court.

Our court employs a flexible and pragmatic approach when assessing the preclusive effect of a court's order. See, e.g., John Morrell & Co. v. Local Union 304A, United Food & Commercial Workers, 913 F.2d 544, 563–64 (8th Cir.1990) (noting that finality in the context of issue preclusion may be satisfied where the litigation has reached such a stage that the "court sees no really good reason for permitting it to be litigated again" (citation omitted)). And when assessing the

preclusive effect of a state court judgment, we apply that state's law governing preclusion. See Finstad v. Beresford Bancorporation, Inc., 831 F.3d 1009, 1013 (8th Cir. 2016). Like our court, South Dakota applies a practical analysis, looking at the parties' roles and actions in the underlying proceeding. See Am. Family Ins. Grp. v. Robnik, 787 N.W.2d 768, 775–76 (S.D. 2010) (considering the practical dynamics of an underlying action to determine whether there had been "a full and fair opportunity to litigate the issues in the prior proceeding," and taking into consideration facts such as (1) the alignment of interests between an insured and an insurer providing a defense under a reservation of rights and (2) the relevancy of later-raised issues during the earlier proceeding). Consistent with this pragmatic approach, we recognize that bankruptcy courts and state trial courts operate within a framework governed not only by law and procedure, but also by the informed choices that the parties make as expressed clearly to the court and to one another. As such, and in general, we do not make preclusion determinations in the abstract or in a vacuum. Rather, we look to see what the underlying court actually said and what the parties communicated to one another and to the court about what they understood to be at issue in the underlying proceeding.

Here, when the bankruptcy court ruled on Appellants' abstention request, the bankruptcy court expressly acknowledged that the state court possessed the authority to make discharge determinations and to assess the true scope of what Appellants were actually seeking through their counterclaims. The bankruptcy court was correct in this regard, and no party in the present case actually challenges this ruling. See Apex Oil Co. v. Sparks (In re Apex Oil Co.), 406 F.3d 538, 542 (8th Cir. 2005) (discussing 28 U.S.C. § 1334(b), holding that a state court could rule on dischargeability issues, and noting that "Congress granted state courts concurrent jurisdiction to consider bankruptcy issues arising from Chapter 11 proceedings"). The bankruptcy court expressed skepticism as to the merits of the Stablers' arguments, but invited the Stablers to return if the state court were to resolve discharge issues in their favor. Simply put, the bankruptcy court did not purport to

abstain permanently. It is obvious to our Court that the bankruptcy court did not believe itself to be issuing a ruling that would have preclusive effect.[2]

Then, in state court, counsel for the Stablers stated in a pretrial hearing that the Stablers were dropping their fraud claim and their demand for attorney fees and electing to pursue in the state-court trial the remedy of rescission of the $650,000 note.[3] At that hearing, and in briefing that preceded the hearing, counsel communicated clearly to the court and to Appellants that, as per the bankruptcy court's invitation, the Stablers still intended to return to bankruptcy court. There is no indication that Appellants contested or objected to this clearly expressed intention and proposed course of action. Now, by asserting that the earlier abstention ruling or the failure to pursue sanctions and fees in state court precludes a return to bankruptcy court, the Appellants essentially seek to treat the state-court election of remedies as a "gotcha" moment. The time to object to the Stablers' proposed course of action, however, was at the hearing where the course of action was proposed. Appellants' failure to object, coupled with their later challenge to the Stablers' return to the bankruptcy court, amounts to an attempt to deprive the Stablers of "a full and fair opportunity to litigate the issues." Robnik, 787 N.W.2d at 775. We will not apply our circuit's or South Dakota's pragmatic approach to preclusion analysis in a

_____

[2]The bankruptcy court stated:

I believe it would be possible, even preferable, to sever debtors' state court claims, allow the state court to determine, as it already has with respect to count one of Beyers'[s] state court counterclaim, whether any of the debts Beyers is seeking to collect have been discharged. And if the state court determines, albeit contrary to the express language of counts three and four of Beyers'[s] state court counterclaim, any of those debts have been discharged, allow debtors to renew their complaint.

[3]Brad's parents did not drop their fraud claim, resulting in their trial of legal issues to a jury rather than to the bench as with the Stablers' rescission claim.

-11-

manner that thwarts such clearly expressed intentions or rewards Appellants' election to remain silent in the face of the Stablers' proposal.

Appellants, ignoring this nuance, argue in their brief that "the [b]ankruptcy court did not qualify or limit the scope of its abstention in any way." It is true that the bankruptcy court dismissed the adversary complaint rather than staying the case. Still, Appellants' assertions flatly ignore the balance of the bankruptcy court record in which the bankruptcy court: (1) expressly invited the Stablers to return to bankruptcy court depending upon the outcome of the state-court proceedings; and (2) later clarified its own order by accepting the case again. See, e.g., United States v. Maull, 855 F.2d 514, 516–17 (8th Cir. 1988) (holding that a lower court's later order "effectively clarified the ambiguity in its earlier order and 'rebutted the presumption of finality created by Rule 41(b)'" (quoting Knox v. Lichtenstein, 654 F.2d 19, 22 (8th Cir. 1981))).

Appellants also argue strenuously that our opinion in Apex Oil Company, Inc. v. Sparks, 406 F.3d 538, 542 (8th Cir. 2005), somehow precludes the Stabler's from returning to the bankruptcy court after the state court entered its judgment. In Apex, we held that state courts hold concurrent jurisdiction to make discharge determinations. Apex, however, did not address the question of a state court's authority to issue sanctions for violation of a bankruptcy discharge. In Apex, homeowners sued a bankrupt debtor in state court alleging the debtor had allowed a plume of gasoline and other petroleum products to form under their homes thus decreasing their property values and risking their health. Id. at 540–41. The debtor, who had already passed through bankruptcy, moved the bankruptcy court to reopen the bankruptcy arguing the plume-related claim had arisen prior to bankruptcy and was barred by the discharge injunction even though the homeowners had not filed a claim in the bankruptcy. Id. at 541. The debtor sought enforcement of the discharge injunction against the homeowners, an order holding the homeowners in contempt for violating the discharge injunction, and an order directing the homeowners to dismiss

-12-

their claims. Id. The bankruptcy court refused to reopen the case. Id. We affirmed, holding 28 U.S.C. § 1334(b) granted state courts concurrent jurisdiction, Apex, 406 F.3d at 542, and finding the state court "fully competent to determine whether the plan and the injunction apply to the [homeowners' ] claims." Id. at 543.

Even assuming that Apex could be extended to stand for the proposition that the state court is empowered to order contempt sanctions and impose attorney fees independent from a state law cause of action, it certainly cannot be extended to preclude the bankruptcy court's actions in this case. Apex held merely that a bankruptcy court did not abuse its discretion in refusing to reopen a case. Apex did not purport to *disempower* the bankruptcy court, which, of course, possesses jurisdiction to enforce its own orders. See, e.g., Koehler v. Grant, 213 B.R. 567, 569–70 (B.A.P. 8th Cir. 1997).

B.      Law of the Case/Preclusive Effect of the Bankruptcy Court's Alternative "Holding"

As noted, the bankruptcy court's first post-discharge order contained seeming inconsistencies. That court appeared to grant the Appellants' motion to dismiss on the merits and also expressly abstained from ruling on the motion. Appellants now argue the bankruptcy court's initial order appearing to grant their motion to dismiss is the "law of the case" and should preclude the later sanction order. We reject their argument for two reasons.

First, if a ruling contains a decision to abstain or a decision concerning the court's power to decide the case, any purported resolution of the merits generally should be of no effect. See, e.g., Remus Joint Venture v. McAnally, 116 F.3d 180, 184 n.5 (6th Cir. 1997) ("[W]hen a . . . ruling rests on alternative grounds, at least one of which is based on the inability of the court to reach the merits, the judgment should not act as a bar in a future action."); 18 Charles Alan Wright et al., Federal Practice

and Procedure § 4421 (3d ed. 2018) ("If a first decision is supported both by findings that deny the power of the court to decide the case on the merits and by findings that go to the merits, preclusion is inappropriate as to the findings on the merits."). The purported resolution of issues on the merits is, for all intents and purposes, a nullity in light of the court's express election to abstain. See Disher v. Info. Res., Inc., 873 F.2d 136, 140 (7th Cir. 1989) ("A dismissal based on the district court's relinquishing its pendent jurisdiction deprives any ruling that he may have made on the merits of a relinquished claim of preclusive effect.").

Second, the BAP in this matter affirmed the bankruptcy court on abstention grounds and did not address the motion to dismiss on the merits. When an appeals court decides the case before it on only one of multiple grounds presented for review, those grounds decided below and not addressed by the appeals court generally do not carry preclusive effect in future proceedings. See Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc., 519 F.3d 421, 425 (8th Cir. 2008) ("As the district court's decision was based on alternative grounds, the preclusive effect of the summary judgment we affirmed in Fairbrook I must be determined by examining our opinion, not the district court's Order."); Mandich v. Watters, 970 F.2d 462, 465 (8th Cir. 1992) ("The general rule is that, 'if a judgment is appealed, collateral estoppel only works as to those issues specifically passed upon by the appellate court.'" (quoting Hicks v. Quaker Oats Co., 662 F.2d 1158, 1168 (5th Cir. 1981))).

Consistent with our pragmatic approach to analyzing preclusion, these two "rules," while seemingly clear, should by no means be considered absolute. Still, we conclude the bankruptcy court's initial statement as to the merits is best understood as a statement of skepticism concerning the Stablers' position coupled with an election to let the state court entertain the merits. Those comments, in light of the bankruptcy court's express abstention, do not establish the law of the case or preclude a later ruling on the merits.

-14-

C.      State of Law Regarding Reaffirmation as Material to the Question of the Bank and Beyers's Good Faith Argument.

"A reaffirmation agreement is one in which the debtor agrees to repay all or part of a dischargeable debt after a bankruptcy petition has been filed." Venture Bank v. Lapides, 800 F.3d 442, 445 (8th Cir. 2015) (quoting In re Duke, 79 F.3d 43, 44 (7th Cir. 1996)).  In general, reaffirmation agreements are unenforceable unless they are (1) "made before the granting of the discharge"; (2) "made after the debtor received disclosures as described in [§ 524(k)]"; and (3) "filed with the court."  11 U.S.C. § 524(c).  Congress imposed these requirements "to . . . safeguard[] debtors against unsound or unduly pressured judgments about whether to attempt to repay dischargeable debts." Venture Bank, 800 F.3d at 446 (alteration in original) (quoting In re Jamo, 283 F.3d 392, 398 (1st Cir. 2002)).  Debtors, of course, are free to voluntarily repay a creditor.  See 11 U.S.C. § 524(f) (stating that discharge does not "prevent[] a debtor from voluntarily repaying any debt").  But, when assessing the voluntariness of the debtor's actions, we consider the creditors' use of pressure and coercion and its impact on the debtor.  And, when assessing the particular actions alleged to be in violation of the discharge—in this case the filing of the counterclaims—we cannot separate those actions and view them in isolation.  Rather, "[t]he 'coerciveness' involved in each case must be assessed on its particular facts." Venture Bank, 800 F.3d at 448 (quoting In re Pratt, 462 F.3d 14, 20 (1st Cir. 2006)).

Sanctions are available for a willful violation of a discharge injunction.  See Walton v. LeBarge (In re Clark), 223 F.3d 859, 864 (8th Cir. 2000) ("[11 U.S.C. §] 105[(a)] gives to bankruptcy courts the broad power to implement the provisions of the bankruptcy code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel.").  Sanctions generally should be unavailable where a creditor acts without knowledge of the injunction or in good faith reliance on the belief that their actions are permissible.  See, e.g., Everly v. 4745 Second Ave., Ltd. (In re Everly), 346 B.R. 791, 797–98 (B.A.P. 8th Cir. 2006) ("[A]s long

-15-

as a creditor has a good faith basis for believing that its debt was excepted from discharge or, as in this case, had no knowledge of any such discharge, the creditor is not subject to sanctions for violating the discharge injunction when it proceeds in state court."); but see Taggart v. Lorenzen, 888 F.3d 438 (9th Cir. 2018), cert. granted, 2019 WL 98543 (U.S. Jan. 4, 2019) (granting certiorari regarding whether a creditor's good-faith beliefs may preclude a finding of civil contempt for discharge injunction violation).  Here, Appellants argue they acted in good faith when seeking a determination from the state court as to what portion of the debt had not been discharged.  In particular, they argue that, at the time they filed their counterclaims in state court, they acted in good faith because the law was unclear regarding the permissibility of obtaining a new commitment from a bankrupt debtor after discharge based upon a secured lender's forbearance in foreclosing on a security interest.[4]

To support their good-faith argument, Appellants cite several lower court cases they characterize as permitting a lienholder and a bankrupt debtor to treat forbearance surrounding a surviving lien as new and sufficient consideration for new debt.  See Watson v. Shandell (In re Watson), 192 B.R. 739, 748 (B.A.P. 9th Cir. 1996); Shields v. Stangler (In re Stangler), 186 B.R. 460, 463–64 (Bankr. D. Minn. 1995); Minster State Bank v. Heirholzer (In re Heirholzer), 170 B.R. 938, 941 (Bankr. N.D. Ohio 1994); In re Petersen, 110 B.R. 946, 950 (Bankr. D. Colo. 1990); Button v. Sheridan Oil Co. (In re Button), 18 B.R. 171, 172 (Bankr. W.D.N.Y. 1982).  They also argue that the bankruptcy court's initial statements in this case voicing skepticism at the Stablers' position further demonstrate the reasonableness of their own view regarding the permissibility and enforceability of the new loan.  Neither argument can succeed.

---

[4]The law in our circuit is now clear that "a secured creditor's post-discharge forbearance is not sufficient to take a reaffirmation agreement outside the purview of § 524(c)."  Venture Bank, 800 F.3d at 447.  The events in this case, however, predated Venture Bank.

The authority Appellants purport to have relied upon at the time they filed their counterclaims establishes, at most, that, in limited circumstances, post-discharge forbearance may serve as consideration for a new commitment to repay the present value of the lien—an amount a bankruptcy court might have found permissible if presented to the court prior to discharge. See, e.g., In re Stangler, 186 B.R. at 463 (indicating reaffirmation based upon lienholder's forbearance was permissible as related to the *present value* of the surviving lien). None of Appellants' cases suggest a lienholder could leverage a security interest to obtain a larger repayment commitment, much less a larger commitment representing a discharged personal debt. The absence of authority to support Appellants' position is unsurprising given the clarity of § 524(c)'s purposes and its express requirements. Moreover, the South Dakota Supreme Court in its review of the state court trial in this matter agreed emphatically and noted the absence of any evidence suggesting Appellants had attempted to place a current value on the surviving lien. See Stabler, 865 N.W.2d at 478. That court stated:

> We do not think the law is so unclear as to render Defendants unaware of its application to Defendants' conduct. . . . Any claim by Beyers that the consideration to forego foreclosure on liens that passed through bankruptcy is new consideration to which [§ 524(c)] does not apply is unconvincing in the context of this case. *There is no indication that any sort of valuation was done on the liens that survived bankruptcy.* Instead, Defendants sought out Stablers to renew all obligations that they owed prior to the bankruptcy, in the same form and amount that Brad and Brenda personally owed pre-bankruptcy. We see no attempt by Defendants to enter into an entirely new arrangement based on the value of the surviving liens. Nor is the mere continuing of a banking relationship sufficient to fulfill the statutory provisions regarding reaffirmation, and Defendants cite no authority for such a proposition.

Id. (emphasis added).

-17-

Finally, although Appellants nominally purported to seek in state court only debt that had not been discharged, the state court viewed this articulation of their counterclaim as disingenuous in that Appellants clearly knew no unsecured debt had survived bankruptcy. Notwithstanding Appellants' naked assertion as to Counterclaims 3 and 4 that they were seeking only non-discharged debt, the state trial court repeatedly emphasized Beyers's knowledge as to the consequences of the bankruptcy discharge and the clarity of his knowledge regarding the insufficiency of the surviving liens.

Subsequently, in ruling on the motion for sanctions, the bankruptcy court similarly rejected any reliance on the naked language of the counterclaims. The bankruptcy court, referencing its initial skepticism as to the Stablers' challenge to Appellants' collection efforts, stated the landscape had changed. The bankruptcy court was no longer looking only at the demand for relief in Counterclaims 3 and 4, but was reviewing the entirety of the matter. Importantly, it had become clear the complicated structuring of the post-discharge transactions, coupled with Beyers's participation in the bankruptcy and its planning, demonstrated a lack of good faith and an effort to defeat the bankruptcy discharge that culminated in the filing of the counterclaims.

We agree. In summary, Appellants enjoyed neither a factual nor a legal basis to assert that they filed Counterclaims 3 and 4 in good faith. The bankruptcy court did not abuse its discretion in imposing sanctions and attorney fees.

We affirm the judgment of the district court affirming the judgment of the bankruptcy court.

_____