# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 12-6008

_____

In re:                                              *
                                                    *
Trilogy Development Company, LLC,                   *
                                                    *
    Debtor.                                       *
                                                    *
                                                    *
Trilogy Development Company, LLC,                   *
                                                    *   Appeal from the United States
    Debtor - Appellant,                           *   Bankruptcy Court for the
                                                    *   Western District of Missouri
        v.                                    *
                                                    *
J.E. Dunn Construction Company;                     *
Mark One Electric Company;                          *
Walton Construction Co., LLC,                       *
                                                    *
    Objectors - Appellees.                        *
                                                    *

_____

Submitted:  March 29, 2012
Filed: April 5, 2012

_____

Before KRESSEL, Chief Judge, SALADINO, and NAIL, Bankruptcy Judges.

_____

SALADINO, Bankruptcy Judge.

This is an appeal by Trilogy Development Company, LLC ("Trilogy") from an order of the bankruptcy court[1] dated January 12, 2012,[2] holding that certain funds held by Trilogy constitute sale proceeds which are subject to the liens of Appellee, J.E. Dunn Construction Company ("J.E. Dunn"),[3] and other lienholders. For the reasons stated below, we affirm.

BACKGROUND

Trilogy filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on May 15, 2009. Its business consisted of the ownership and operation of a real estate development project located in the "Plaza" area of Kansas City, Missouri, known as the West Edge Project. Construction of the project commenced in January 2006 and continued until shortly before the bankruptcy petition was filed. By the date of the bankruptcy filing, numerous contractors, suppliers, and vendors asserted mechanic lien claims against the project for unpaid balances due.

The liens against the project far exceeded its value and on January 24, 2010, Trilogy commenced an adversary proceeding seeking a declaratory judgment as to the validity and priority of all liens against the project. On January 20, 2012, the bankruptcy court entered its Order of Final Judgment in the adversary proceeding which determined the amount, validity, and priority of various consensual liens and

[1]Chief Judge Dennis R. Dow, United States Bankruptcy Court for the Western District of Missouri.

[2]The bankruptcy court announced its decision orally on the record on January 11, 2012, followed by a written order dated January 12, 2012.

[3]Joining J.E. Dunn as Appellees are Mark One Electric Company and Walton Construction Co., LLC.

the mechanic lien claims. The mechanic lien claims alone totaled more than $17,000,000.00.[4]

On July 8, 2010, Trilogy filed a motion under §§ 105(a) and 363 of the Bankruptcy Code to, *inter alia*, conduct an auction sale of the project free and clear of liens. The motion was granted and an auction was conducted. On August 31, 2010, the bankruptcy court entered its sale order authorizing Trilogy to close on the sale of the project free and clear of liens to WERC, LLC ("WERC") for the sum of $10,000,000.00 as the prevailing bid at the auction. The sale order also approved the backup bid of VA West Properties, LLC ("VA West") for $9,500,000.00 and authorized Trilogy to conclude a sale to VA West in the event the sale to WERC was not consummated. Finally, the sale order provided: "All lien claims and interests shall attach to the sale proceeds to the extent of their validity, perfection, and priority against the Project."

Pursuant to the sale order, WERC entered into a purchase agreement under which it posted an earnest money deposit in the amount of $1,000,000.00 and agreed to close by September 30, 2010. WERC failed to close, the purchase agreement was terminated, and the deposit was retained by Trilogy as liquidated damages. Subsequently, Trilogy closed on the sale of the project to VA West as the approved backup bidder under the sale order. Trilogy currently retains possession of both the net proceeds from the sale to VA West and the deposit.[5]

---

[4]The final order in the adversary proceeding is on appeal to the United States District Court for the Western District of Missouri.

[5]Following a hearing on October 22, 2010, the bankruptcy court entered an order approving the expenditure of $100,000.00 of the deposit funds to maintain the project pending the closing with VA West. Thus, the remaining deposit funds at issue are in the amount of $900,000.00.

On December 5, 2011, Trilogy filed its motion for determination of secured status under 11 U.S.C. § 506. Under the terms of the motion, Trilogy sought a determination that the mechanic lien claims did not attach to the deposit and that the deposit was an unencumbered asset of Trilogy's Chapter 11 bankruptcy estate. After a hearing on January 11, 2012, the bankruptcy court announced its ruling that the deposit is part of the sale proceeds of the project and, pursuant to the sale order, the deposit is subject to the mechanic lien claims. This appeal followed.

## STANDARD OF REVIEW

The bankruptcy court's January 11, 2012, order interprets the scope of the phrase "sale proceeds" as used in the sale order. A bankruptcy court's interpretation of its own order is reviewed under an abuse of discretion standard. *Boyher v. Radloff (In re Boyher)*, 2012 WL 752336 (B.A.P. 8th Cir. Mar. 9, 2012) (citations omitted). An abuse of discretion will be found only if the court's judgment was based on clearly erroneous factual findings or on erroneous legal conclusions. *See In re Bowman*, 253 B.R. 233, 237 (B.A.P. 8th Cir. 2000). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court, on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)).

## DISCUSSION

In its brief, Trilogy raises several issues to be considered on appeal, with its lead argument being that Missouri mechanic lien law provides no basis for attachment of mechanic liens to the deposit. Trilogy asserts that since Missouri statutory law is the source of law for creation of any lien in favor of the mechanic lien creditors, the

creditors must necessarily demonstrate that the Missouri mechanic lien statutes establish a lien against the deposit.

That argument is inapposite to this appeal. Missouri's mechanic lien law is relevant only to the issue of the extent and priority of the various liens against the project – which was decided in the adversary proceeding that is the subject of a separate appeal pending in the United States District Court. It also fails to recognize that the mechanic lien claims attached to the sale proceeds by virtue of the sale order – not by operation of Missouri law. The sale order, which was prepared and submitted to the bankruptcy court by Trilogy, authorized the project to be sold free and clear of liens and expressly provided for liens to attach to the "sale proceeds" to the extent of their validity, perfection, and priority against the project. The sale order was not appealed and became final. Thus, the only issue to be considered is whether the bankruptcy court abused its discretion in deciding that the deposit was part of the sale proceeds of the project.[6]

As indicated, the sale order authorized the sale of the project free and clear of liens and specifically provided that "[a]ll lien claims and interests shall attach to the sale proceeds to the extent of their validity, perfection, and priority against the Project." The sale order does not define "sale proceeds," nor is there any requirement that the lien claimants have some sort of statutory or legal claim to the deposit in order for it to constitute sale proceeds. The sale order simply substituted the "sale proceeds" in place of the project.

---

[6]Trilogy's other assignments of error similarly miss the mark by failing to recognize that attachment of the mechanic lien claims to the sale proceeds has been decided by a final order of the bankruptcy court. Thus, the arguments raised under § 552(a) and § 506(d) are irrelevant to the interpretation of the scope of the words "sale proceeds." Further, the fact that the purchase agreement called for the deposit to be paid to the seller if the buyer failed to close does not determine whether the deposit should be considered "sale proceeds" under the terms of the sale order.

5

At its core, the motion to determine secured status filed by Trilogy was a motion asking the bankruptcy court to interpret its own prior order. As noted previously, a bankruptcy court's interpretation of its own order will be overturned by an appellate court only if an abuse of discretion is found. *Boyher v. Radloff (In re Boyher)*, 2012 WL 752336 (B.A.P. 8th Cir. Mar. 9, 2012) (citations omitted). After all, the judge who entered the order is clearly in the best position to interpret its meaning.[7]

In his oral ruling, the bankruptcy judge thoroughly explained his analysis. He explained that WERC paid the deposit as part of a contract giving it the right to buy the project. He also recognized that the deposit would not exist but for the project, and if the sale to WERC had closed, the deposit "would have been proceeds and there's no reason to treat it differently because it didn't close." The bankruptcy court's decision was not based on clearly erroneous factual findings or erroneous legal conclusions and, therefore, should be affirmed.

## DECISION

Accordingly, we affirm the decision of the bankruptcy court.

―――――――――――――――――

―――――――――――――――――

[7]Indeed, that interpretive principle even applies to fictional characters: "'When *I* use a word,' Humpty Dumpty said in rather a scornful tone, 'it means just what I choose it to mean–neither more nor less.'" Lewis Carroll, Through the Looking Glass & What Alice Found There (Macmillan Publishing) (1871).