# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 19-6038

_____

In re: Armstrong Energy Inc., also known as Armstrong Land Company,

*Debtor*

------------------------------

Murray Kentucky Energy, Inc.; Western Kentucky Consolidated Resources, LLC

*Movants - Appellants*

*v.*

Ceralvo Holdings, LLC; Western Mineral Development, LLC; Thoroughbred Resources, L.P.

*Objectors - Appellees*

_____

Appeal from United States Bankruptcy Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 3, 2020
Filed: April 23, 2020

_____

Before SALADINO, Chief Judge, NAIL and SANBERG, Bankruptcy Judges.

_____

SALADINO, Chief Judge

The Appellants, Murray Kentucky Energy, Inc., and its subsidiary Western Kentucky Consolidated Resources, LLC, appeal the order of the bankruptcy court[1] denying their motion to enforce the order confirming the debtors' third amended plan of reorganization and to enjoin parties from asserting claims barred by the third amended plan. In that order, the bankruptcy court held that neither 11 U.S.C. §1141(d), Kentucky law, nor the language of the confirmed plan released Murray from its contractual or contingent indemnity obligations.

We have jurisdiction over this appeal. *See* 28 U.S.C. §158(b). For the reasons that follow, we affirm.

## STANDARD OF REVIEW

We review findings of fact for clear error and conclusions of law de novo. *Venture Bank v. Lapides*, 800 F.3d 442, 443 (8th Cir. 2015). Statutory interpretation is a legal question that we review de novo. *Hardy v. Fink*, 787 F.3d 1189, 1192 (8th Cir. 2015).

A bankruptcy court is in the best position to interpret its own orders, *Apex Oil Co. v. Sparks (In re Apex Oil Co.)*, 406 F.3d 538, 542 (8th Cir. 2005), and a bankruptcy court's interpretation of its own order will be overturned on appeal only if

_____

[1]Hon. Kathy A. Surratt-States, Chief United States Bankruptcy Judge for the Eastern District of Missouri.

2

an abuse of discretion is found. *Trilogy Dev. Co., LLC v. J.E. Dunn Constr. Co. (In re Trilogy Dev. Co., LLC)*, 468 B.R. 835, 838 (B.A.P. 8th Cir. 2012).

## FACTUAL BACKGROUND

The underlying facts are not in dispute.

***The Subleases.***

On November 1, 2017, Armstrong Energy, Inc., and certain of its affiliates filed petitions under Chapter 11 of the United States Bankruptcy Code in the Eastern District of Missouri. Prior to filing their Chapter 11 petitions, the debtors subleased certain coal mines in Kentucky from Ceralvo Holdings, LLC, Thoroughbred Resources, L.P., and Western Mineral Development, LLC (collectively "lessors"). The subleases were the subject of on-going litigation between third parties and the lessors. A lawsuit involving the Ceralvo sublease was filed pre-petition in federal district court in Kentucky (the "2011 Litigation"). A lawsuit concerning the Western Mineral Development subleases was filed pre-petition in Kentucky state court (the "2017 Litigation"), but that case was later dismissed. After the bankruptcy case was filed, the same plaintiffs from the 2017 Litigation, plus an additional party, filed litigation in Kentucky federal district court (the "2018 Litigation").

The subleases contain an indemnification provision requiring the debtors to fund, *inter alia*, the lessors' litigation expenses:

> Section 6.1 - <u>Indemnification of Lessor.</u> Lessee shall, at its own cost and expense, pay all wages, workmen's

compensation claims, claims for material, equipment and supplies contracted for by the Lessee in connection with the conduct of its operations hereunder, and shall indemnify and hold, Lessor and its assigns harmless of, from and against, any and all claims damages, demands, expenses, fines, liabilities and taxes (of any character or nature whatsoever, regardless of by whom imposed), and losses of every conceivable kind, character and nature whatsoever (including, but not limited to, claims for losses or damages to any properly or injury to or death of any person) asserted by or on behalf of any person arising out of, resulting from or in any way connected with Lessee's presence on or mining of the coal on the Premises or the Surface Lands. Lessee also covenants and agrees, at its expense, to pay, and to indemnify and save Lessor and its assigns harmless of, from and against, all costs, reasonable attorneys' fees, expenses and liabilities incurred in any action or proceeding brought by reason of any such claim or demand.

Ex. A.1 to Decl. of W. Aaron Bowlds (Bankruptcy Court Docket No. 751).

Prior to the petition date, the debtors complied with their indemnification obligations under the subleases by funding the lessors' litigation expenses.

### *The Confirmed Plan and Transaction Agreement.*

Under the terms of the debtors' third amended joint Chapter 11 plan, the debtors entered into a transaction agreement under which Appellants purchased substantially all of the debtors' assets. On February 2, 2018, the bankruptcy court confirmed the plan and approved the transaction agreement. On February 20, 2018, Appellants consummated the asset purchase pursuant to the transaction agreement and the plan became effective. As part of the transaction agreement, the subleases were specifically assumed and assigned to Appellants.

4

As part of that assumption and assignment, the transaction agreement states at section 2.4 that Appellants[2] assume and agree to discharge when due certain specified "Liabilities" of the debtor, including, "All Liabilities . . . under the Assigned Contracts and Transferred Real Property Interests solely to the extent arising on or after the Closing[.]" Liabilities are defined as:

> "Liability" means any debt, loss, claim (including "claim" as defined in the Bankruptcy Code), damage, demand, Tax, fine, judgment, penalty, liability, expense, commitment or obligation (including those arising out of any action, such as any settlement or compromise thereof or judgment or award therein), whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due, and whether in contract, tort, strict liability or otherwise, and whether or not resulting from third party claims.

Further, in conjunction with this transaction, certain specific provisions of the leases and subleases -- primarily concerning royalties and the term length -- were amended. The amendment documents were executed by the Appellants and the lessors effective as of February 20, 2018, and each states: "All provisions of the Leases remain in full force and effect on and after the date hereof except as expressly amended hereby and are hereby ratified and confirmed." Ex. A.2 to Decl. of W. Aaron Bowlds (Bankruptcy Court Docket No. 751). Notably, the indemnification clause was not amended.

The confirmed plan also contained a third-party release provision. That provision is found at Article X(D) of the plan and provides:

---

[2]In the transaction agreement, "NEWCO" is the Buyer's designee and Appellants are referenced as the Buyer.

*D. Releases by Holders of Claims and Interests.*

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties in facilitating the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to forever release, waive, and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity, or otherwise . . . .

. . .

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Transaction Agreement, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Debtors' Third Amended Joint Chapter 11 Plan, at 40-41 (Bankruptcy Court Docket No. 453).

### The Bankruptcy Court Opinion.

After the "Effective Date" of the confirmed plan, the lessors made demand upon Appellants to honor the indemnification obligations related to the 2011 Litigation and

the 2018 Litigation. Appellants declined to do so. Instead, Appellants filed a motion with the bankruptcy court seeking to enforce the confirmation order and enjoin the lessors from asserting claims that are barred by the confirmed plan, arguing that they were not liable for pre-confirmation obligations pursuant to 11 U.S.C. §1141(d), and that the terms of the confirmed plan released them from such pre-effective date claims, obligations, and liabilities.

On November 12, 2019, the bankruptcy court denied Appellants' motion to enforce the confirmation order and enjoin the assertion of claims barred by the confirmed plan. The bankruptcy court held:

- the discharge provision of §1141(d) applies only to debtors, not to third parties such as Appellants, and §524(e) states that a debtor's discharge does not affect the liability of any other party for a debt;

- the plan did not release Appellants' pre-effective date contingent indemnity obligations;

- Kentucky law would not consider an unmatured contractual indemnity obligation to be one that has accrued, so the contingent litigation expenses were post-effective date obligations that were not released under the plan;

- there was no evidence that the parties intended to release the indemnity obligations arising from the sublease litigation.

Appellants filed notice of this appeal on November 26, 2019, asserting that the bankruptcy court erred in

- finding that §§ 363 and 1141 did not release Appellants from pre-petition obligations based on a third-party release;

- finding that "the Plan does not release pre-Effective Date contingent indemnity obligations" and

- finding that, under Kentucky law, a contractual indemnity obligation does not accrue until the indemnitee's liability becomes fixed and certain.

## DISCUSSION

The Appellants argued in the bankruptcy court that their purchase of the debtors' assets "free and clear" under section 363, together with the the release provision in the confirmed plan, precluded their liability for indemnification payments for litigation expenses accruing after the effective date of the plan. The bankruptcy court heard oral argument on the Appellants' motion and issued a thorough order addressing -- and denying -- each of the Appellants' arguments.

A bankruptcy court's interpretation of the confirmed plan is entitled to deference as an interpretation of its own order and "should be reviewed under the abuse of discretion standard." *JCB, Inc., v. Union Planters Bank, NA,* 539 F.3d 862, 869 (8th cir. 2008) (quoting *Gen. Elec. Capital Corp. V. Dial Bus. Forms, Inc. (In re Dial Bus. Forms, Inc.)* 341 F.3d 738, 744 (8th Cir. 2003)).

8

A court abuses its discretion when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; or when all proper factors and no improper ones are considered, but the court commits a clear error of judgment in weighing those factors.

*City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1152 (8th Cir. 2013).

Ultimately, the issue decided by the bankruptcy court was whether the Appellants, after the Effective Date of the confirmed plan, were released from the contractual indemnification obligations in the subleases arising from the 2011 Litigation and the 2018 Litigation. Despite the manner in which Appellants framed the issues on appeal, we are faced with one issue – that is, whether the bankruptcy court abused its discretion in holding that the indemnification obligations were not released. In reviewing that issue, we must give deference to the bankruptcy court's interpretation of its own order. *Union Planters,* 539 F.3d at 869.

Appellants assert that they bought the assets of the debtors under § 363(f); that is, free and clear of liens and encumbrances. They further assert that they are a "Released Party" under the third-party release provision in Article X(D) of the confirmed plan.[3] Appellees do not dispute those general propositions. Instead, they rely upon the express terms of the transaction agreement, the assumption and assignment of the leases and the "carve-out" language in the confirmation order's third-party release provision.

---

[3] Appellants also referenced the discharge provisions of § 1141(d), but those provisions clearly apply only to the debtor.

The release provision in the plan contains an express carve-out or exception to its applicability. It says the releases in Article X(D) of the plan "do not release any post-Effective Date obligations of any party or Entity under the Plan, the Transaction Agreement, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan."

Therefore, the bankruptcy court was faced with determining whether *under the terms of the confirmed plan* the indemnity provisions in the subleases constituted pre-Effective Date obligations (which were released under Article X(D) of the plan), or post-Effective Date obligations (which were not released). The term "post-Effective Date obligations" as used in the plan is not a defined term.

To answer this question, the bankruptcy court noted that the subleases are governed by Kentucky law, and held that the law of that state should be applied to the determination of when the indemnification obligations arise under the subleases. Although neither party raised the issue, we question whether it was necessary for the bankruptcy court to consider Kentucky law at all. The bankruptcy court was interpreting its confirmation order and related transaction documents; it was not interpreting the subleases. There was no dispute that the subleases contained indemnification obligations. The only question was whether the confirmation order should be interpreted to have released those obligations. We see no reason why Kentucky law would have any bearing on that question.

In any event, the bankruptcy court discussed the case of *Affholder, Inc. v. Preston Carroll Co.*, 27 F.3d 232 (6th Cir. 1994), where the Supreme Court of Kentucky, in answering the questions certified by the Sixth Circuit, found that the statute of limitation for an indemnity claim against a third-party subcontractor started to run when a subcontractor filed a claim against the contractor for reimbursement costs due to a design flaw allegedly caused by the third-party subcontractor. *Id.* at 235. Specifically, "[t]he date of the filing of the claim was the first moment in time that the

10

construction companies could have possibly known that they were facing potential liability. It is that knowledge which triggers the beginning of the running of the statute of limitations." *Id.*

Ultimately, the bankruptcy court determined that *Affholder* did *not* answer the question of whether the indemnity obligations under the subleases were pre- or post-Effective Date obligations. First, the bankruptcy court held that *Affholder* was inapplicable because it involved common law indemnity rather than contractual indemnity.[4] Second, it held that even if a "claim" for indemnity existed under the subleases prior to the Effective Date, it was at most a "contingent" claim and the "obligation" to pay that contingent claim did not accrue until the liability became fixed and certain. The bankruptcy court found no controlling Kentucky law on the issue and Appellants have not presented any. We see no clear error in the determination by the bankruptcy court that under the terms of the confirmed plan the indemnity obligations were contingent obligations that accrued post-effective date as they became fixed and certain.

In holding that the release provision in the plan did not release the contingent indemnity obligations of the subleases, the bankruptcy court correctly recognized that courts should treat third-party releases with caution. Such releases are rare and are allowed only in extraordinary cases and only under exceptional circumstances, so as

---

[4]The parties vehemently dispute whether *Affholder* involved common law or contractual indemnity, but in the context of this case, the distinction is irrelevant. The bankruptcy court clearly gave deference to the position that the indemnification claim may have accrued before the Effective Date, saying: "In this case, even assuming Lessors' post-Effective Date demand is a claim that accrues before the Effective Date, Murray still has the indemnity obligations if the Plan does not release pre-Effective Date **contingent** indemnity obligations." (Emphasis in original.)

to prevent an abuse of the bankruptcy process or a circumvention of the Bankruptcy Code's protections. *See, e.g.*, *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005); *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648 (6th Cir. 2002); *Munford v. Munford, Inc. (In re Munford, Inc.)*, 97 F.3d 449 (11th Cir. 1996); *In re Archdiocese of Saint Paul & Minneapolis*, 578 B.R. 823 (Bankr. D. Minn. 2017); *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994).

Here, appellants are trying to fit their circumstances into the broad general release provisions in the plan while ignoring the specific contractual terms directly applicable to them. The undisputed facts show that the subleases were assumed and assigned to Appellants without exception or exclusion, except as set forth in lease amendments executed upon assignment. Those amendments revised certain specific provisions of the subleases, but did *not* revise or amend the indemnification provisions. In fact, to be clear, the amendments state "All provisions of the Leases remain in full force and effect on and after the date hereof except as expressly amended hereby and are hereby ratified and confirmed." Amendment to Coal Mining Leases and Subleases, ¶ 5 (Ex. A.2 to Decl. of W. Aaron Bowlds (Bankruptcy Court Docket No. 751)). Appellants are also trying to expand the concept of purchasing an asset "free and clear" under section 363 without giving credence to obligations that were otherwise specifically assumed.

It is without question that the transaction agreement under which Appellants purchased the assets of debtors specifically states that Appellants assume and agree to discharge when due certain specified "Liabilities" of the debtor, including, "All Liabilities under the Assigned Contracts and Transferred Real Property Interests solely to the extent arising on or after the Closing." Liabilities are defined to include "any

12

debt, loss, claim (including "claim" as defined in the Bankruptcy Code), damage, demand, . . . liability, expense, commitment or obligation . . ., whether known or unknown, asserted or unasserted, absolute or contingent . . . . "

Accordingly, the plan and transaction documents contain specific provisions whereby Appellants assumed every liability associated with the assigned leases arising on or after closing, other than those modified by the lease amendments. The lease amendments also expressly stated that all other provisions shall remain in full force and effect and are ratified and confirmed. Those specific provisions of the transaction documents would be nonsensical if the third-party release provisions in the plan, or the purchase of assets free and clear of liens and encumbrances, released Appellants from the contingent indemnity obligations. Under general state-law principles of contract construction, "language which deals with a specific situation prevails over more general provisions if there is ambiguity or inconsistency between them." *H.B. Oppenheimer & Co. v. Prudential Ins. Co. of Am.*, 876 S.W.2d 629, 632 (Mo. Ct. App. 1994). In fact, "[g]enerally, in the construction of contracts, it is held that if the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should be held to operate as a modification and *pro tanto* nullification of the former." *A & L Holding Co. v. S. Pac. Bank*, 34 S.W.3d 415, 419 (Mo. Ct. App. 2000) (quoting *Surface v. Ranger Ins. Co.*, 526 S.W.2d 44, 48 (Mo. Ct. App. 1975)).

The bankruptcy court reviewed the indemnification clause, the terms of the transaction agreement, and the release provision in the plan in reaching its conclusion that the sublease indemnification obligations were contingent obligations that arose once they became fixed and payable post Effective Date. The bankruptcy court found no evidence that the parties intended to release those obligations with the plan or related transaction documents. The bankruptcy court's analysis is logical, sound, and

supported by the record. To the extent the bankruptcy court had to make any factual findings in connection with interpreting its confirmation order, those findings are "plausible in light of the record viewed in its entirety" and are not subject to reversal. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985); *Universal Bank, N.A. v. Grause (In re Grause)*, 245 B.R. 95, 98 (B.A.P. 8th Cir. 2000). The bankruptcy court followed principles of contract assignment and interpretation in reaching its conclusions about which obligations Appellants assumed and which were released. It upheld the agreements and the confirmed plan as written, rather than as Appellants want to rewrite them.

Because the bankruptcy court was in the best position to interpret its own order, we defer to its decision.

## CONCLUSION

The bankruptcy court did not abuse its discretion in determining the confirmed plan requires Appellants to comply with the contractual indemnity obligations. Accordingly, the decision of the bankruptcy court is affirmed.

_____

14